NICHOLAS P. IGLEHART *et al.*

*v.*

WILLIAM W. BIERCE *et al.*

36   133
89a   ⁴89

1. CONDITION PRECEDENT — *what constitutes.* A party who was indebted to a bank, which had become insolvent and its affairs placed in the hands of receivers, executed to the receivers, in compromise of the debt, a bond for a sum less than the original debt, with a *proviso* that if the receivers should not obtain the ratification of the compromise by a certain designated court, the bond should be void. In a suit to foreclose a mortgage given to secure the bond, it was held to be incumbent on the mortgagees to aver and prove a full compliance on their part by showing that the ratification was obtained. The validity of the mortgage depended on this.

2. SAME — *must be performed according to the terms stipulated.* The terms of the compromise were, that the debtor was to pay a given sum, five hundred dollars in cash, and the residue in five equal annual payments; the terms of the compromise, as it appeared to have been ratified by the court, were, that five hundred dollars were to be paid down, and the residue in *three* equal annual installments. This was a ratification of a contract different in its terms from the one made by the receivers, and did not constitute a compliance with the condition precedent to their right of recovery.

3. PARTIES — JURISDICTION — *who may sue in the courts of this State — receivers appointed in another State.* Where a bond and mortgage have been executed to the receiver of the assets of an insolvent bank, appointed in another State, such receiver may have his remedy in the courts of this State to enforce their payment.

4. SAME — *of the rights of the successor of such receiver.* And the successor of such receiver, appointed by the same authority, to whom the assets of the bank were transferred, may resort to the courts of this State to enforce a bond and mortgage given to the original receiver.

5.  SAME — *parties at law and in equity — equitable assignees.*  As to such bond and mortgage executed to the original receiver, his successor would hold the rights of an equitable assignee, and though, at law, he might not be enabled to sue in his own name, yet, in equity, the rule is different.  While at law the proceedings would be required to be in the name of the original receiver to whom the bond and mortgage were made, for the use of the assignee, the equities of the assignee will be protected and enforced in a court of equity by a suit in the name of such assignee.

6.  PARTIES — *in chancery.*  Where a bank has been declared insolvent by a court of competent jurisdiction, and all its assets, rights, credits and effects have passed into the hands of a receiver, it is not a necessary party to a suit to foreclose a mortgage given to the receiver to secure a debt due to him in that capacity.  The bank being insolvent and all its property passed to the receiver, the *prima facie* intendment is that it has no property or interest in jeopardy.

WRIT OF ERROR to the Superior Court of Chicago.

This was a bill in chancery, exhibited by William W. Bierce, Marcus Brown, and Henry N. Hedges, Jr., receivers of the Bank of Circleville, Ohio, against Nicholas P. Iglehart, and Frances M., his wife, to foreclose a mortgage executed by them to the complainants as such receivers, to secure the payment of moneys due by Iglehart to the Bank of Circleville, Ohio.

It appears that Iglehart was indebted to the Bank of Circleville, Ohio, at the time it went into liquidation, in the sum of nine thousand eight hundred and twelve dollars and sixty-one cents.  Henry F. Page and William P. Darst were appointed receivers of the assets and effects of this bank, and on the 21st of September, 1863, Iglehart, with his wife, executed to them a bond and mortgage on certain real estate in Chicago, and in the county of Cook, to secure this debt.  The receivers had compromised the claim with Iglehart for one-half the amount, in consideration that Iglehart would secure the prompt and punctual payment of the one-half, being four thousand nine hundred and six and thirty one-hundredths dollars.  To this end Iglehart executed his bond of the same date with the mortgage, in the penalty of ten thousand dollars, conditioned for the payment to the receivers, their executors, administrators or assigns, of the sum of four thousand nine hundred and six and thirty one-hundredths dollars, as follows: Five hundred

dollars cash, and the balance in five equal annual payments of eight hundred and eighty-one and twenty-six one-hundredths dollars each, with interest at six per cent., payable annually, upon the whole sum remaining unpaid, with the understanding that if default should be made in the payment of either of the installments, and continue for ninety days, then the whole of the original debt of nine thousand eight hundred and twelve and sixty-one one-hundredths dollars, less what might be paid thereon, should forthwith become due and demandable. To this there was this *proviso,* written under the bond, that if Page and Darst, the receivers, should not obtain the written ratification of this compromise, by the Court of Common Pleas of Pickaway county, Ohio, the bond should be void.

When the agreement was reported to that court, on the 15th of November, 1853, the following order was entered: after reciting the judgment against Iglehart, his insolvency, and the inability of the receivers to recover the debt, or any part of it, and the proposition of Iglehart to pay, in satisfaction of the judgment, one-half the amount of the same, and one-half of the interest due thereon at the date of the proposition, "which payment is to be made as follows, viz., five hundred dollars cash in hand, and the residue in *three* equal annual payments, with interest, payable annually, and to be secured by a mortgage on certain lots in Chicago," etc.; "that said receivers agree to accept said proposal, provided this court should ratify said agreement, and that said Iglehart has paid the sum of money as stipulated, viz., five hundred dollars, and has executed his notes for the residue, and a mortgage and power of attorney to confess judgment according to the terms of the proposed compromise. It is therefore ordered by the court, that said compromise, proposed by said parties as *aforesaid,* be, and the same is hereby approved, ratified and confirmed, and that said receivers be authorized and directed to compound the aforesaid judgment against said Iglehart, in the manner and upon the terms hereinbefore stated."

In February, 1854, Darst and Page resigned the office of receivers, and the complainants, William W. Bierce and the

others, were duly appointed their successors, from which time they have acted as the receivers, and exhibited the bill in this case.

The bill claimed as due to complainants, as receivers, the original sum of nine thousand eight hundred and twelve and sixty-one one-hundredths dollars, with interest after September 21, 1853, less the cash payment of five hundred dollars, together with sixty-six and four one-hundredths dollars paid by complainants for the taxes on the mortgaged property.

The other defendants were made so on account of some supposed claim they might have had to the premises. An answer without oath was called for, and the usual prayer of foreclosure was made.

Iglehart answered the bill, denying all the material allegations in it. A replication was put in, and proofs taken. The evidence is not necessary to be recited more at length than is above stated as facts in the case. The court found the complainants, as receivers, to be entitled to the bond and mortgage, and that there was due thereon at the date of the decree, February 7, 1863, the sum of fourteen thousand five hundred and seventy-four and ninety-three one-hundredths dollars, and directed a sale of the mortgaged premises, subject to redemption under the statute, unless the same should be paid within ten days.

To reverse this decree, Iglehart and wife sued out this writ of error, and assign for error that the Superior Court erred in rendering any decree for the complainants, and in not dismissing the bill; and that the decree is for more than was due on the mortgage.

Messrs. ARRINGTON & DENT, for the Plaintiffs in Error.

Messrs. WAITE & TOWNE, for the Defendants in Error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery in the Superior Court of Chicago, to foreclose a mortgage, brought by the defendants in error

against the plaintiffs in error, in which a decree passed against them on the 7th of February, 1863, for the sum of fourteen thousand five hundred and seventy-four and ninety-three one-hundredths dollars, and costs, and a sale of the mortgaged premises ordered to satisfy the same unless the same should be paid within ten days. From this decree the plaintiffs prosecute this writ of error, assigning as errors, that the Superior Court erred in rendering any decree for the complainants, and in not dismissing the bill; and that the decree was for a sum greater than the amount due on the mortgage.

The facts of the case are, that plaintiff in error, Nicholas P. Iglehart, was indebted to the Bank of Circleville, Ohio, at the time of its collapse, in the sum of nine thousand eight hundred and twelve and sixty-one one-hundredths dollars. Henry F. Page and William P. Darst were appointed receivers of the assets and effects of this bank, and on the 21st of September, 1863, plaintiffs in error executed to them a mortgage and bond on certain real estate in Chicago, and in Cook county. This mortgage recites this indebtedness — that they had compromised their claims against him, and agreed to release him in consideration that he would secure to them the prompt and punctual payment of one-half of said amount, viz: $4,906.30, in the manner and at the times thereinafter specified, and that he had executed his bond of the same date in the penalty of $10,000, conditioned for the payment unto them, their executors, administrators or assigns, of said $4,906.30, as follows: $500 cash, and the balance in five equal payments annually of $881.26 each, with interest at six per cent., payable annually upon the whole sum remaining unpaid, with the understanding that if default should be made in the payment of either of said installments, and if such default should continue for ninety days, then the whole of said $9,812.61, less what might be paid thereof, should forthwith become due and demandable; and with a *proviso* written under said bond, that if said Page and Darst should not obtain the ratification of said compromise by the Court of Common Pleas of Pickaway county, Ohio, said bond should be void.

The first question presented is, inasmuch as the bond was to be of no validity unless the Court of Common Pleas of Pickaway county, Ohio, ratified the compromise, did that court ratify it?

The decree does not so find, nor does the proof show such ratification.     That proof shows the ratification of a contract different in its terms from the one made by the receivers, with Iglehart.    By their agreement, after the payment of five hundred dollars in cash, the balance was to be secured by notes and mortgage having five years to run, and this is the mortgage in this suit, and by its terms it was to be null and void unless ratified by the court in Ohio.    The court in Ohio did not ratify that agreement, but recite one different in its provisions, which they did ratify and confirm.

It was incumbent on the defendants in error to aver and prove a full compliance on their part, by showing that the ratification was obtained.    The validity of the mortgage depended on this.

It may be, as claimed by the defendants in error, a clerical error has intervened in reciting the terms of the compromise. It may be so, but we have no authority for so saying.    The record of the Court of Common Pleas must speak for itself, and is not open to explanation or correction by parol proof.

The terms of this compromise not having been ratified by the Court of Common Pleas of Pickaway county, Ohio, and as the validity of this mortgage depended on such ratification, it follows, the defendants in error were not in a position to institute these proceedings.

The plaintiff in error cannot be adjudged to be in default until the compromise, which is the basis of the mortgage, has been ratified.    He has a right to insist on that, before he can be called upon to make the stipulated payments.

Another point is made by the plaintiff in error, which it is necessary to dispose of, as the case may be again tried, if a ratification is obtained.    He contends that the complainants, the defendants in error, not being the parties to whom the mort-

gage was given, nor the heirs or assignees of Page and Darst, are not entitled to bring suit on the mortgage in our courts.

In support of this proposition, the case of *Booth* v. *Clark*, 17 Howard (U. S.) 330, is cited. We do not think that case is like this in principle or in the facts. There, the receiver appointed by the court of New York, attempted to sue in the court of the District of Columbia, and the court held the receiver had no power out of the jurisdiction appointing him. In the case before us, the bond and mortgage were made to Darst and Page, and transferred to the complainants by the action of the proper court in Ohio. Now, as Darst and Page could have sued on the bond and mortgage in our courts, and as all their interest in the thing has passed to complainants, but not by a regular assignment under the hands of Darst and Page, yet by the transfer to them, as the successors of Darst and Page, all the equitable right to the same has become vested in complainants, and they can enforce it in our courts. It is the mere question, will a court of equity protect the rights of an equitable assignee ?

These complainants are the successors of Darst and Page, originally appointed receivers of this bank, and by the order appointing them, all the property and assets of the bank in their possession became vested in the complainants. Though at law they might not be enabled to sue in their own names, yet in equity the rule is different. Whilst the former would require the proceedings to be in the name of Darst and Page, for their use, to whom the bond and mortgage were made, by the latter, the equities of their assignees will be protected and enforced in a court of equity, by a suit in the name of such assignees. They are the only parties in interest since their appointment, and equity will afford them relief in this suit. *Dixon, Assignee,* v. *Buell, Adm'r,* 21 Ill. 203 ; *Olds* v. *Cummings et al.,* 31 ib. 191 ; *Townsend* v. *Carpenter,* 11 Ohio Rep. 21. Calling them "receivers," is mere description of the person.

The next point made by the plaintiff in error is, that the Bank of Circleville was not made a party.

We see no force in this objection.   That was a defunct and insolvent corporation, so declared by the judgment of a court in Ohio of competent jurisdiction, and all their assets, rights, credits and effects passed into the possession and control of the complainants.   The interest of the bank in this proceeding and suit has not been pointed out, and we are unable to discover it. The bank being insolvent, and all its property passed to the receivers, the *prima facie* intendment is, that they have no property or interest in jeopardy.   The prior receivers may have some interest, and they have been made defendants.   As in a case of bankruptcy, all that the bankrupt has, is a mere right to call upon the assignees for an account; but the presumption being that there is not enough for the creditors, he is not considered as having such an interest in the property as will entitle him to maintain a suit respecting it; so that, *prima facie*, the bankrupt has no demands.   1 Dan'l Ch. 71.   There is no conceivable interest which the bank can have in this mortgage.

For the reasons given, the decree must be reversed, the defendants in error having no cause of action.

*Decree reversed.*