WILLIAM H. CLARK and CHARLES H. BREWSTER

*v.*

PAINTED POST LUMBER COMPANY.

[Decided August 19th, 1918.]

1. Where a receiver is appointed in this state for a foreign corporation, creditors in this state are not entitled to preference in the funds collected by him.

2. Under such receivership, to the extent that there are assets in this state, domestic creditors are entitled ordinarily to have their rights settled by the judicial tribunals of this state.

3. Under such receivership, the proper course of procedure is for the receiver to act upon the claims filed in his jurisdiction, and to present those claims which he allows to the foreign receiver for action thereon. The assets in New Jersey may then be paid over to the foreign receiver upon his giving bond that he will repay to the New Jersey receiver the amount of the assets then turned over to him unless within a reasonable time there be paid to the New Jersey creditors, whose claims are filed with the New Jersey receiver, their fair distributive share of all the assets of the corporation.

4. *Atwater* v. *Baskerville, ante p. 121,* and *Dolan* v. *Universal Fire Brick Co., ante p. 138,* followed.    *McDermott* v. *Woodhouse, 87 N. J. Eq. 615,* distinguished.

On bill, &c.

*Mr. Robert M. Boyd, Jr.,* for the New Jersey receiver.

*Mr. Lloyd Thompson,* for the foreign creditors.

*Mr. Mark ˙Townsend,* for Omer G. Russell, a domestic creditor.

LANE, V. C.

Painted Post Lumber Company is an insolvent corporation of the State of New York. After a receiver had been appointed in New ˙York, application was made to this court under the pro-

visions of the Corporation act, section 65, as amended (*P. L. 1912 p. 585*), for the appointment of a receiver in this jurisdiction. Such receiver was appointed. He gathered in all the assets in this state and now has in his hands as the proceeds thereof some $6,000. An order was made on June 12th, 1917, requiring creditors to file their claims within two months of the date thereof. Claims of domestic creditors as filed with him aggregate some $2,000; claims of foreign creditors as filed with him aggregate approximately $10,000.

The receiver now seeks to settle his accounts as receiver under appointment by this court and prays for an order that he may pay the balance over to himself in his capacity as receiver appointed in New York. The New Jersey creditors object, insisting, first, that they are entitled, so far as the assets in this state are concerned, to a preference, and second, that if not this court should so control the assets within this state as that domestic creditors will not be forced into another jurisdiction to obtain payment of the amounts to which they may be entitled from the assets of the estate upon a general distribution.

First. Domestic creditors are not entitled to a preference. The policy of this state expressed in its statute law is not to prefer domestic creditors over foreign creditors in any case of dissolution or insolvency. Section 58, act concerning corporations, Revision of 1896, *2 Comp. Stat. p. 1637;* sections 85 and 86, same act, *2 Comp. Stat. p. 1652.*

The New Jersey creditors rely upon the language of Chief-Justice Beasley in *Hurd* v. *Elizabeth, 41 N. J. Law 1* (at *p. 3*), in which case the chief-justice, speaking of the power of a receiver to sue in a foreign jurisdiction, said: "It (the power) could not be exercised in a foreign jurisdiction to the disadvantage of creditors resident there, because it is the policy of every government to retain in its own hands the property of a debtor until all domestic claims against it have been satisfied." But the chief-justice, I think, did not mean by "satisfied" "paid in full." What he meant was that the court would not permit the exercise of power by a foreign receiver unless it were certain that the legal rights of domestic creditors would be protected. In *Irwin* v. *Granite State Provident Association, 56 N. J. Eq. 244,* Vice-

Chancellor Reed held that the assets within this state did not change in the least the proportion to which the New Jersey shareholders would be entitled; that the assets here were to be taken into account as a part of the fund to be distributed. In *Stone* v. *New Jersey and Hudson River Railway Co., 75 N. J. Law 172,* the supreme court, through Mr. Justice Swayze, said: "It is urged, however, that the present plaintiff is a foreign receiver and the defendant a New Jersey corporation. We are unable to see why these facts should be allowed to give the New Jersey creditor an advantage over other creditors. We do not allow a foreign receiver to exercise his powers in our jurisdiction to the disadvantage of creditors resident here, but subject to this restraint comity requires that he should be acknowledged and aided. *Hurd* v. *Elizabeth, supra.* Where it is necessary our courts will appoint an ancillary receiver, but the assets will be so administered that creditors in this state and in the foreign jurisdiction shall fare alike. *Irwin* v. *Granite State Provident Association, supra.*"

Second. While the receiver was appointed here after the appointment of the receiver in New York, he was appointed under the provisions of the statute, section 65, as amended, laws of 1912, page 535. The statutory procedure was followed. Under the provisions of section 75 of the Corporation act (*2 Comp. Stat. p. 1648*) an order was made directing creditors to bring in their claims within two months of the date of the order. Notice of such order in pursuance thereof was mailed to all of the creditors of the company. In speaking of such an order the court of errors and appeals, in *McDermott* v. *Woodhouse, 101 Atl. Rep. 376, 87 N. J. Eq. 615,* said, *arguendo:* "As far as we know, the only authority for such a proceeding is section 75 of the Corporation act (*Comp. Stat. p. 1648*) ; but this can only apply to a New Jersey corporation; our courts cannot force a New York creditor of a New York corporation to submit his claim to our tribunals under penalty of losing all right to participate in the distribution of the assets." It was not necessary for the determination of the cause then before the court that the point should be determined, and I think it must be considered *dictum.* It has been contended that the effect of the decision in *McDermott* v. *Wood-*

*house* is that this court cannot appoint a receiver of a foreign corporation under the statute, and that any receiver appointed of the assets of a foreign corporation within this jurisdiction under the general equity power of the court is merely ancillary, and that his sole duty is to gather in the assets and turn the proceeds over to the receiver appointed in the place of the domicile of the corporation, assuming that such a receiver has been appointed, and that if no such receiver has been appointed the court is powerless to act. The result would be either that before a receiver had been appointed by the courts in the domicile of the corporation, the courts of this jurisdiction would be powerless to act, and the creditors would be left to their legal remedies, and the assets would be subject to seizure and distribution among those who acted first (there would be no way of preventing preferences), or if the court might appoint a receiver, then after gathering in the assets, there could be no distribution until a receiver had been appointed in the jurisdiction of the domicile of the corporation which might be never. The courts of this state certainly would not force its citizens to apply to a foreign tribunal which might have control of nothing but the corporate entity, to set in motion a proceeding, to the end that a decree might be made directing the method of distribution of assets within this jurisdiction. Indeed, a situation is not hard to imagine in such event where the creditors would be absolutely powerless. The jurisdiction of the domicile might not have a procedure which could be set in motion by creditors. My understanding of the New York law is that no receivership of a corporation is possible except at the instance of the attorney-general. I have two cases now before me—*Dolan* v. *Universal Fire Brick Co.* and *Cross* v. *Printing Company,* one involving a Delaware and the other a Maryland corporation. All the assets of both were here. Receivers were appointed here. They have gathered in the assets and are ready to distribute. No receivers have been appointed in the places of the domiciles. Must this court wait until such receivers are appointed? I think not.

I considered the situation in *Atwater* v. *Baskerville, 89 N. J. Eq. 121,* and *Dolan* v. *Universal Fire Brick Co., 89 N. J. Eq. 138,* and held that the court might appoint a receiver under the

statute and that the procedure would be as nearly as practicable the same as if the corporation were domestic. If I am wrong in this, and if the receiver must be considered as appointed under the general equity power of the court, still I think the situation will not be changed, for under such a proceeding the assets within this jurisdiction may be gathered in and their proceeds distributed. The court would adopt a course which would be fair to all creditors and would follow the statutory procedure by analogy as nearly as practicable. The contention referred to above ignores the following. As stated by Chief-Justice Beasley in *Hurd* v. *Elizabeth:* "That the officer of a foreign court should not be permitted, as against the claims of creditors resident here, to remove from this state the assets of the debtor, is a proposition that appears to be asserted by all the decisions * * * ." This remark of the chief-justice was quoted by Vice-Chancellor Green in *Falk* v. *Janes, 49 N. J. Eq. 484* (at *p. 489*). At *p. 490* the vice-chancellor said: "Such limitation is based, then, on the principle that the first duty of the state is to its own citizens." Vice-Chancellor Reed, in *Irwin* v. *Granite State Provident Association, 56 N. J. Eq. 244* (at *p. 250*), said that the citizens of this state should not be driven into the courts of another state to obtain their distributive shares.

To the extent that there are assets within this state domestic creditors are entitled ordinarily to have their rights settled by the judicial tribunals of this state. I do not mean to infer that there may not be cases where the claims of creditors here have arisen under such circumstances, as that, in cases of insolvency, they will be remitted to the foreign jurisdiction. I am now considering the ordinary relationship of debtor and creditor created under such circumstances as that the law of this state would apply in the determination of their legal rights. Were it not for the appointment of a receiver in this jurisdiction domestic creditors might, if the corporation were a foreign corporation, not recognized under the laws of this state, have proceeded by attachment. If the corporation was one recognized by the laws of this state, and authorized to do business here, they might sue at law. By the intervention of this court the creditors have been deprived of their ordinary legal remedies. For the remedies of

which they have been deprived, there must be substituted, so far as assets within this state are concerned, another remedy. If section 75 of the Corporation act does not apply, then there is no doubt in my mind but that the court, before it permitted the assets gathered in by an ancillary receiver to be paid over to a foreign receiver, would devise a procedure by which domestic creditors would be notified of the situation and permitted to assert their claims in this jurisdiction. In no other way could the duty of the state toward its own citizens, which has been repeatedly held to be to retain within its own hands property of a debtor until domestic claims against it have been satisfied and to refrain from driving its citizens into the courts of another state to litigate claims with respect to assets within this state, be subserved. But I think there is adequate provision made in the statute. It is indeed true that our courts cannot force a New York creditor of a New York corporation to submit his claims to our tribunals under penalty of losing the right to a participation in the distribution of the assets, but neither should our courts force our own citizens into a foreign tribunal to litigate their claims with respect to assets within this jurisdiction, and our courts *can* force foreign creditors to submit their claims to our tribunals under penalty of losing the right to participate in assets within this state. I am speaking now of abstract power.

The policy of this state is well stated by the supreme court in *Stone* v. *New Jersey and Hudson River Railway Co., 75 N. J. Law 174,* to be to see to it that the assets here are so administered as that creditors in this state and in the foreign jurisdiction shall fare alike. If the sole duty of an ancillary receiver appointed in this state is to gather in assets and to remit to a foreign jurisdiction the proceeds thereof, as it is claimed is intimated by the following language of the court of errors and appeals in *McDermott* v. *Woodhouse:* "It is manifestly quite as necessary to ascertain the total assets of the corporation as its total liabilities in order to fix the amount needed to pay creditors, and these assets can only be finally ascertained in the courts of the domicile to which assets may be remitted by courts of other forums acting through ancillary receivers," then the reasoning indulged in by the courts in *Hurd* v. *Elizabeth. Stone* v. *New*

*Jersey and Hudson River Railway Co.* and *Irwin* v. *Granite State Provident Association* was unnecessary, for, if the duty of an ancillary receiver is thus limited, the foreign receiver himself might as well be permitted to act. The question is one of far-reaching importance. In the instant case, the domicile of the corporation is in New York, and the policy of its law is similar to that of ours with respect to a ratable distribution among creditors. But it is not beyond the range of possibility that in some of the other states there may be laws with respect to priorities quite opposed to the policy of our law, and it seems to me to be inconceivable that this court, having control of assets within this state, would remit its citizens to a foreign tribunal which might have control only of the entity of the corporation and compel them to submit themselves to a method of distribution, in conflict with the policy of this state, under laws having no extraterritorial force. Comity does not extend so far. *Hurd* v. *Elizabeth, supra* (at *pp. 4, 5*), and cases cited; and see *Catlen* v. *Wilcox Silver Plate Co. (Ind.)*, *24 N. E. Rep. 250.* If domestic creditors must be forced to litigate in New York, they must also be forced to litigate in Texas. And it may be contended that the effect of such a determination does not stop here. The foreign corporations which may be authorized to do business in this state are not only those incorporated under the laws of a sister state, but also those incorporated under the laws of any foreign state, kingdom or government. Can it be thought possible that the courts of this state will, as against the protests of domestic creditors, direct its receiver to transmit the proceeds of assets to the foreign jurisdiction which happens to be that in which the corporation was created and remit its citizens to their remedies there? And yet it may be so contended.

It seems to me to be clear that the creditors who have filed claims in this jurisdiction are entitled to have the validity of their claims settled here. That this court must retain control of the assets until it is assured that the validity of the claims as settled here will be recognized by the foreign tribunal, and the creditors paid their ratable proportion of all the assets. Upon the court being so assured, the assets may be removed to the foreign tribunal for distribution there. It is conceivable, if the

assets were to be directed to be turned over without condition, that the domestic creditors would never be paid. There may be a settlement and the company permitted to resume its business. In the meantime, the assets in New Jersey will have been removed and the New Jersey creditors left helpless, unless they actively intervene in New York and subject themselves to the provisions of the New York law. Vice-Chancellor Reed, in *Irwin* v. *Granite State Provident Association, 56 N. J. Eq.* (at *p. 251*), pointed out that either of two courses might be pursued in a similar case, that the assets might be paid over to the foreign receiver upon his giving a bond in this state to pay the New Jersey shareholders their distributive shares, or the order might be that sufficient assets be retained here to be distributed through the hands of the receiver in this state, but according to the proportion fixed by the decree of the foreign court.

I think that the proper course of procedure in the instant case is to require the receiver to act upon the claims filed with him in this jurisdiction, either to allow or disallow them, to present these claims in the New York receivership and to secure the action of the New York court upon them. The assets may then be turned over to the New York receiver upon his giving bond that he will repay to the New Jersey receiver the amount of the assets now turned over to the New York receiver unless within a reasonable time there be paid to the claimants whose claims are filed with the New Jersey receiver their fair distributive share of all the assets of the corporation.

The form of the bond is not settled definitely. I will hear counsel. It is not the policy of the court to interfere to any greater extent than necessary in the winding up proceedings pending in a foreign jurisdiction. The result to be accomplished is to protect the domestic creditors to the extent of the assets within the jurisdiction so that they may not be obliged to submit to the foreign jurisdiction the question of the validity of their claims, and so that they may not be driven into a court of another state to obtain their distributive shares. Of course, if the domestic creditors desire to share in the general distribution, the foreign court may compel them to come within the foreign jurisdiction. If so compelled, the creditors may elect to take

whatever they can get from a distribution of the assets within this jurisdiction. If they so elect, I think there is nothing that this court can do but to distribute the assets here unless it can be assured that the claimants here will be permitted to share in the general distribution without being obliged to litigate in the foreign tribunal.

Settle order on five days' notice.