This cause is heard upon the following stipulations:
"It is hereby stipulated by and between the parties hereto by their respective counsel that:
"1. William D. Gordon, the complainant in the above entitled cause, was on January 20th, 1931, duly appointed secretary of banking of the Commonwealth of Pennsylvania and that he has duly qualified as such.
"2. That by reason of the involved financial condition of the Glenside Bank and Trust Company, a banking corporation of the Commonwealth of Pennsylvania, doing business in Glenside, county of Montgomery, State of Pennsylvania, the complainant, as secretary of banking, on October 3d 1931, under and by virtue of the statutes of the State of Pennsylvania relating thereto, took possession of the business and property of the Glenside Bank and Trust Company, filing his certificate of such action in his office at Harrisburg, Pennsylvania, *Page 470 
and also filed a certified copy of the said certificate of possession in the court of common pleas of the county of Montgomery No. 14 as of September term, 1931, in accordance with the statutes of the State of Pennsylvania relating thereto.
"3. That on and prior to October 3d 1931, said Glenside Bank and Trust Company was the owner of the following described premises, to which it had a good and marketable title:
"All that lot with the apartment building thereon erected situate in Spray Beach in Long Beach township, Ocean county, New Jersey, being lots numbered two and three in section "E" on a map or plan of lots of the Spray Beach Land Company, duly filed in the Ocean county clerk's office, more particularly described as follows:
"Beginning at the distance of forty feet southwestwardly from the corner of Twenty-fourth street in said Spray Beach, continuing from thence southwestwardly in front or breadth on Atlantic avenue eighty feet and extending of that width in length or depth northwestwardly between parallel lines at right angles with said Atlantic avenue, one hundred feet.
"4. That on February 15th, 1932, complainant entered into an agreement of sale with The Pitcairn Company, a Delaware corporation, covering the above described premises, a copy of which agreement is annexed hereto and made a part hereof and marked Exhibit A.
"5. That on March 8th, 1932, complainant filed a petition to sell the aforesaid premises, under the laws of the State of Pennsylvania, in the common pleas court No. 14 of Montgomery county, Pennsylvania, a copy of which said petition is annexed hereto and made a part hereof and marked Exhibit B.
"6. That on April 1st, 1932, the complainant herein, by virtue of an order of said court of common pleas No. 14 of the county of Montgomery was directed and authorized to sell said premises herein described to The Pitcairn Company, or its assigns, a copy of which said order is annexed hereto and made a part hereof and marked Exhibit C. *Page 471 
"7. That on March 31st, 1932, said The Pitcairn Company made, executed and delivered an assignment of the agreement referred to in paragraph 4 hereof to the defendant herein, Spray Beach Hotel, Incorporated, a corporation of the State of New Jersey, a copy of which said assignment is annexed hereto and made a part hereof and marked Exhibit D.
"8. That although said agreement of sale called, under its terms, for settlement to be held on or before April 15th, 1932, the parties thereto, to wit, the complainant herein and Spray Beach Hotel, Incorporated, have, by mutual consent, continued the time for settlement, so that the same is still open.
"9. The defendant herein on October 29th, 1932, refused to settle for the land above described in accordance with the terms of the agreement of sale above referred to, alleging at that time as its reason for such refusal that the complainant did not own and could not deliver to this defendant a good and marketable title to said premises described in the bill of complaint. The defendant waived a tender of a deed.
"10. Glenside Bank and Trust Company was a banking corporation of the Commonwealth of Pennsylvania. The business of said company was conducted entirely in the State of Pennsylvania. It did no business in the State of New Jersey and has no creditors resident in or located in New Jersey.
"11. The following being sections of the Banking act are set forth herein as the law of the Commonwealth of Pennsylvania with relation to the subjects covered thereby. Said sections provide as follows:
"`Section 21. Power to Take Possession.
`The secretary may, after hearing had upon notice given, with the approval and consent of the attorney-general, take possession of the business and property of any corporation or person subject to the supervision of the department, whenever it shall appear to him that such corporation or person:
`I. Has violated any law regulating its or his business, and has persisted in such violation in disregard of an order duly made by the secretary;
`II. Is conducting business in an unauthorized or unsafe manner and has persisted in disregard of an order duly made by the secretary;
`III. Is in an unsafe or unsound condition to continue business: *Page 472 
Provided, in such case, that the secretary may forthwith, without such hearing and consent of the attorney-general, take possession of the business and property of any such corporation or person receiving moneys on deposit, when and if, in his opinion the protection of depositors and the public requires such pre-emptory action;
`IV. Has an impairment of capital, which has not been restored or made good within the time fixed by order of the secretary;
`V. Has suspended payment of obligations;
`VI. Has neglected or refused to comply with the terms of any lawfully issued order of the secretary;
`VII. Has refused, upon proper demand, to submit the records and affairs of the business to the secretary, a deputy, or any duly authorized examiner or agent of the department;
`VIII. Has refused to be examined upon oath or affirmation regarding such affairs;
`IX. Is in the hands of a receiver appointed by any court, or in any bankruptcy proceeding, or of an assignee or trustee for creditors appointed by such corporation or person.
`The secretary may, in like manner, take possession of the business and property of any private or unincorporated bank, or the estate of any private banker, otherwise exempt from the supervision of the department, whenever such private or unincorporated bank shall have made an assignment for the benefit of creditors or for any of the causes mentioned hereinbefore in this section.' Pennsylvania Banking act of 1923, as amended byP.L. 1927 p. 762 § 7.
"`Section 29. Status of Secretary as Receiver.
`Except as herein otherwise provided, the secretary shall, when he has taken possession of the business and property of a corporation or person, have all the rights, powers and duties of a receiver appointed by any court of equity in this commonwealth; and he shall be vested, in his official capacity, with all the rights, powers and duties of such corporation or person and with all the property of such corporation or person, including debts due, liens, or securities therefor, and rights of action or redemption, whether or not the property of such corporation or person, including debts due, liens, or securities therefor, and rights of action or redemption, are held in the name of such corporation or person, or in the name of some other corporation or person, but actually the property of the corporation or person of which or of whom the secretary has possession.
`He shall be the representative of the creditors of the corporation or person, and entitled, as such, to have vacated and set aside, for the benefit of the creditors, any judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance, or encumbrance, which could have been avoided by the creditors or any of them, or by which it is attempted to give any creditor unlawful preference over another.
`He may, with leave of court obtained on petition after notice to all creditors of whom he has knowledge, surrender to the corporation or person any assets, including choses in action, whether the subject of pending proceedings or not, which are burdensome and of no advantage to creditors. *Page 473 
`He may enter into leases for real estate belonging to the corporation or person for a period not to exceed three (3) years, upon such terms as may be acceptable to him, without leave of court; and with leave of court may enter into leases for such property for a term not exceeding ten (10) years.
`He may by agreement in writing with the mortgagor, and without leave of court, extend the period for the payment of a mortgage on real property for a period not to exceed three years upon such terms as may be acceptable to him.
`He may without leave of court borrow money from the Reconstruction Finance Corporation and any other agency of the United States government or Commonwealth of Pennsylvania, for the purpose of assisting him in the liquidation of the corporation or person, and to expedite the distribution of the assets thereof to the depositors and creditors of such corporation or person and pledge as security for the loan of such funds any personal property or real estate of such corporation or person.' Section 29, Banking act of 1923, as amended July 20th, 1932, No. 2, section 1.
"`Section 32b. Sales of Real and Personal Property.
`The secretary may sell at public sale any or all of the real and and personal property of such corporation or person without any order of court. He may, with leave of court, after such notice to creditors by advertising or otherwise as the court may direct, sell either real or personal property at private sale upon such terms and under such conditions as the court, upon petition of the secretary, may direct, and all sales theretofore made may be approved by the court. Sales under this section may be either all for cash or partly for cash and partly for evidences of indebtedness approved by the court.' Section 41, Banking act, 1932, as amended by act of May 28th, 1931, No. 118.
"`Section 35. Actions and Suits by and Against Secretary.
`For the purpose of executing any of the powers and performing any of the duties hereby conferred and imposed upon him, the secretary may, in the name of the corporation or person, prosecute and defend any and all actions and proceedings at law, in equity, or otherwise, pending at the time when the secretary takes possession of the business and property of such corporation or person.
`He may, by bill of discovery or other legal or equitable proceeding, obtain information of, and sue for and recover, any assets, debts, or damages, which such corporation or person might sue for and recover, or which any of the creditors might make available for the payment of their claims.
`He may, at any time while he is in possession of the property and business of a corporation, institute and maintain against the directors, trustees, managers, or officers, any action or proceeding which is vested in such corporation or in the stockholders or creditors thereof.
`He shall be liable to suit, in his representative capacity, by any person seeking to recover specific property if such property could have been recovered as against the creditors of the corporation or person levying an execution thereon.' Section 35, Banking act of 1923, P.L. p. 809. *Page 474 
"Supplemental stipulation:
"It is stipulated that section 10 of the stipulation, as originally filed in this cause, be and the same is hereby withdrawn, and in place thereof is substituted the following:
"`10. Glenside Bank and Trust Company was a banking corporation of the Commonwealth of Pennsylvania. The business of said company was conducted entirely in the State of Pennsylvania. It did no business in the State of New Jersey.'"
There appears to be very few cases in which the question here to be determined is construed; that is, does the secretary of banking, c., in Pennsylvania, have the power to convey in his own name certain premises in the State of New Jersey which, prior to the closing of the bank, was vested in it? The text books and digests cite numerous cases in which it is held that a receiver has the right to sue in his own name, some of which citations are:
"It appears to be a well settled rule that where the rights of a receiver do not rest merely upon his appointment by the court of another state, but there has been a assignment to him, in his official capacity, of the property in question, or, by virtue of the statute of such state the title to the property is vested in him, he may, it seems, sue and recover the same, not strictly by virtue of his appointment, but by reason of his title, he being considered, for that purpose, substantially as assignee." 23R.C.L. ¶ 150, citing Murtey v. Allen, 71 Vt. 377;45 Atl. Rep. 752.
"It is fundamental that, to authorize a party to sue at law in his own name, he must have the legal title to the matter or thing in controversy, and no exception to this rule exists at common law as to suits brought by a receiver. He can maintain an action at law in his own name only when he has himself the legal title."High Rec. ¶ 220, and other cases cited.
In an annotation in 3 A.L.R. 262:
"In Kelly v. Dolan (1914), 218 Fed. Rep. 966; affirmed
(1916), 147 C.C.A. 443; 233 Fed. Rep. 635, it is said: `A chancery receiver cannot bring an action in his own name *Page 475 
outside of the jurisdiction of the court of his appointment, because he does not have the legal title to the property of the corporation or the chose in action, and his representative capacity will not extend beyond the limits of the jurisdiction by which he was appointed. The effect of a statutory receivership, however, may, by force of law, be to transfer to the receiver the legal title to the property of the corporation, including choses in action. The juridicial consequence of this is that such a receiver may bring suit outside of the jurisdiction of the authority appointing him, for the reason that he has the legal title, and therefore may enforce it by an action.'
"The right of a receiver to sue outside of the jurisdiction of the court appointing him, so far as the right to do so depends upon his having title, appears to have been recognized principally in cases (such as Relfe v. Rundle — LifeAssociation of America v. Rundle — (1880), 103 U.S. 222;26 L.Ed. 337; American National Bank v. National Benefit andCasualty Co. (1895), 70 Fed. Rep. 420; Avery v. Boston SafeDeposit and Trust Co. (1896), 72 Fed. Rep. 700; Hopkins v.Lancaster (1918), 254 Fed. Rep. 190; Planters Bank v.Bass (1847), 2 La. Ann. 430; Bockover v. Life Associationof America (1883), 77 Va. 85, and Parker v. StoughtonMill Co. (1895), 91 Wis. 174; 51 Am. Rep. 881;64 N.W. Rep. 751) in which the receiver or other officer is constituted the virtual successor or representative of the corporation itself, upon the entry of a decree for its dissolution, and in cases (such as Bernheimer v. Converse (1907), 206 U.S. 516;51 L.Ed. 1163; 27 Sup. Ct. Rep. 755; Converse v. Hamilton,224 U.S. 243; 56 L.Ed. 749; 32 Sup. Ct. Rep. 415; Ann. Cas. 1913d1292; Hale v. Hardon (1899), 37 C.C.A. 740;95 Fed. Rep. 774; Goss v. Carter (1907), 84 C.C.A. 402;156 Fed. Rep. 746; Irvine v. Putnam (1911), 190 Fed. Rep. 321; Irvine v.Elliott (1913), 203 Fed. Rep. 82; Irvine v. Baker
(1915), 225 Fed. Rep. 834; John W. Cooney Co. v. ArlingtonHotel Co. (1917 — Del.), 101 Atl. Rep. 879; Howarth v.Lombard (1900), 175 Mass. 570; 49 L.R.A. 301;56 N.E. Rep. 888; Howarth v. Angle (1900), 162 *Page 476 N.Y. 489; 47 L.R.A. 725; 56 N.E. Rep. 489; Shipman v.Treadwell (1913), 208 N.Y. 404; 102 N.E. Rep. 634) in which he is invested by the law governing the stockholders' liability, with the right to enforce such liability, in which he is spoken of as a `quasi-assignee' of the cause of action.
"The question, then, is, what sort of a statutory provision will constitute the receiver the representative of the corporation, as distinguished from the mere custodian of its property?
"The federal courts are bound by the decisions of the state courts as to the interpretation of the receiver's statutory powers. Hopkins v. Lancaster, supra; Sterrett v. SecondNational Bank (reported herewith), ante 257.
"Under a statute which provides that, upon the rendition of a final judgment dissolving an insurance company or declaring it insolvent, all the assets of such company shall vest in fee-simple and absolutely in the superintendent of the insurance department and his successor or successors in office, who shall hold and dispose of the same for the use and benefit of the creditors and policyholders of such company, and such other persons as may be interested in such assets, the superintendent of insurance has a standing in court outside the state. Relfe
v. Rundle (Life Association of America v. Rundle), supra;26 L.Ed. 337.
"And see, also, as holding that the superintendent of the state insurance department was vested with the assets of an insurance corporation upon the entry of a decree of dissolution. Bockover
v. Life Association of America, supra."
"The receivers of an insolvent banking corporation may sue in another state on a bond and mortgage taken by them, and so may their successors. Iglehart v. Bierce (1864), 36 Ill. 133.
"And a receiver claiming by a conveyance to him as such, and not depending alone on the decree vesting the property in him, may sue in the courts of a foreign jurisdiction to recover real estate. Oliver v. Clarke (1901), 45 C.C.A. 360;106 Fed. Rep. 402.
"Where a receiver is appointed in this state for a foreign corporation, creditors in this state are not entitled to preference *Page 477 
in the funds collected by him." Clark v. Painted Post LumberCo., 89 N.J. Eq. 409.
 Van Tuyle v. New York Mortgage Co., 38 N.J.L.J. 187, was a case in which the superintendent of banks of New York was held to have had, by the consideration of comity, the right to collect the assets of a New York Trust Company as against an attaching creditor in this state. Hurd v. Elizabeth, 41 N.J. Law 1, andMerchants National Bank v. Pennsylvania Steel Co.,57 N.J. Law 336, cited.
4 Pom. Eq. Jur. ¶ 1676:
"Some confusion has arisen from the failure on the part of certain courts to recognize the difference between acts of the receiver which are permitted by comity and acts which give rise to rights in the receiver. Of the latter class are the assignments already mentioned where the receiver is clothed with the legal title to the assets of the corporation or person whom he represents. In such cases he sues in the foreign jurisdiction not by reason of the comity of the state, but as a matter of right. It matters not whether the thing was in possession or a chose in action; the assignee or receiver who has been invested with the title should, on principle, have the right, aside from comity, to sue on his legal title in any state of the union. The owner of the thing has a right to transfer it, and such transfer passes title. Not so with a judicial transfer which owes its force to a statute, the effect of which can only be carried out by foreign states through the exercise of comity. The modern cases recognize the difference and hold that a receiver who is in effect a trustee or assignee may sue in his own name. `The effect of such a transfer on goods in another state is not to be determined simply by the rule of comity which is applicable to extra-territorial assignments by operation of law but rests on the general principles of jurisprudence as to the right of everyone to dispose of what he owns.'"
"The superintendent of the insurance department of a state in which a corporation was created, who is made by operation of law the successor of the corporation, is entitled to appear in a suit in another state against the corporation and claim a removal of the case on the ground of citizenship." Relfe v. Rundle,103 U.S. 222; 26 L.Ed. 337; 23 L.R.A. 52.
In a case which involved the question of whether or not title had passed to an insolvent assignee under the laws of New Jersey, it being held such being the fact, lands in Pennsylvania *Page 478 
passed. Supreme court of Pennsylvania, December 16th, 1845 (Lamb v. Fries, 2 Pa. St. 83), Chief-Justice Gibson said:
"As Jacob Lamb is still alive, it is unnecessary to determine the quantum of the estate which he took by his father's will, for, whatever it may be, it is unexpired. If it was divested by any proceeding under an insolvent law, prior to the judgment in 1838, on which the premises were sold to the plaintiff, he had no interest that could be bound by it, except the interest which would result to him by implication of law after payment of the debts. He was discharged as an insolvent debtor by the common pleas of Northampton county, in 1821, on assigning his property for the benefit of his creditors; and as nothing was done under the assignment for more than twenty years, the presumption is that the debts were paid by him, and that the beneficial ownership of the property had all along remained in him. But there is no room for such presumption after his discharge by the inferior court of common pleas of New Jersey, in 1837; and if the land in contest passed by his assignment on that occasion, there was no beneficial interest in him, on which the judgment could operate. It is clear that land can pass only by a conveyance, according to the laws of the country where it is situate; and hence a foreign assignment in bankruptcy, not being a voluntary conveyance of it by the bankrupt, will not pass it. But there is no reason why it should not pass by an insolvent's voluntary deed, without aid from the law of the country where he was discharged, provided the conveyance be executed according to the law of the situs. In Mullikin v. Aughenbaugh,1 Pa. St. 117, it was said that an insolvent debtor's assignment, on his own petition, is a voluntary conveyance in consideration of his discharge; and it will consequently pass his land here, if it contain apt words, and be executed in all respects according to the law of the state. It is a part of the case, that there was a general assignment in this instance; and as the presumption is, that it was by deed according to the common law, it is decisive of the question. On the facts stated, we must take it, that the legal title to the premises is *Page 479 
in the insolvent's assignees, under the law of New Jersey; and as there is neither proof nor presumption of payment, it appears that there was no beneficial interest in the insolvent debtor which would be bound and sold."
The following cases in New Jersey are in accord with the principle above cited:
Hurd v. City of Elizabeth, 41 N.J. Law 1, held that: "A receiver appointed in a foreign jurisdiction, clothed with authority to take the designated property, wherever situate, may sustain a suit for such property in the courts of this state."
In an opinion by the late Chief-Justice Beasley, he says:
"The appointment of a receiver, with full powers to collect the property of a litigant, wherever the same might be found, should be deemed to operate as an assignment of such property to be enforced everywhere, except in those cases when by so doing the policy of this state would be displaced or the rights of its own citizens invaded or impaired."
The case of Varnum v. Camp, 13 N.J. Law 326, held: "An assignment of the real and personal property of the assignor, in trust, to defray the expenses attendant upon the execution of the trust, and thereafter to apply the proceeds to secure and prefer a favored creditor, and then to divide among his other creditors, in full or pro rata, as the case may be, and to return the surplus, if any, to the assignor, is illegal. To make an assignment valid, under the act (Rev. Laws 674 § 1), two things are essential: (1) that it should be for the equal benefit of the creditors; (2) that it creates no preference."
This case is of great interest because the decision is based upon the fact that the assignment in question was not in accordance with the laws of this state and was, by the laws of New Jersey, as respecting creditors, not parties, illegal, invalid and ineffectual, to divest the property of the grantor, or to transfer and convey an available interest to the grantee.
Irwin v. Granite State Provident Association, 56 N.J. Eq. 244:
"Whether, after a foreign corporation doing business in this state has passed into the hands of a receiver in the state *Page 480 
of its domicile, a receiver will be appointed in this state, and if so, whether the domiciliary receiver will be appointed here, will depend upon the volume and kind of business done in this state, and whether any special interest of the creditors or citizens in this state is likely to be involved in the settlement of the insolvent affairs."
In the case of Bentley v. Whittemore, 19 N.J. Eq. 462: "A voluntary assignment made by a non-resident debtor, which is valid by the law of the place where made, cannot be impeached in this state with regard to property situated here, in behalf of non-resident creditors, on the ground that such assignment is incompatible with the statute of this state.
"This rule obtains as well with respect to realty as to chattels situate in this jurisdiction, provided the form of the assignment is such as is required by our land regulations."
The chief-justice took occasion to say:
"Nor am I able to concur in the view that there can be any discrimination in the application of this principle, between real and personal estate. If the assignment, as to form and the parties to it, be adequate to pass the title to real property according to the laws of the rei sitae, it can be avoided only on the ground that such assignment is in discordance with the policy of the laws of such state. No doubt is intended to be hinted as to the settled existence of the rule, that the validity of every disposition of real estate must depend upon the law of the country in which that estate is situated. The authorities referred to by the chancellor in his opinion in this case, make it conspicuously manifest that this principle has passed into a maxim of universal recognition. I do not question this rule, therefore, but I am constrained to question the application which has been made of it to the facts now in hand. It is admitted that the title to the premises in question cannot pass unless such title has been conveyed, in every particular, whether with respect to forms, persons, or objects, in entire subjection to the laws of this state; but the conviction which compels me to dissent from the view already taken is, that such conformity, in the most complete degree, does actually exist. Is this not so? With *Page 481 
regard to mere mode, no question can be made on this head. The deed in question has been regularly executed, acknowledged and recorded, and is in due legal form; in all ceremonious parts, therefore, the transaction is a compliance with our land regulations. What, then, is to render this title defensible? I can imagine nothing that can be set up to invalidate it, except the idea that the distribution of the assignment, to which this conveyance is ancillary, militates with the provisions of our state upon that subject. Now, it is certainly not to be denied that if this incompatibility exist, the conveyance, on the principle just admitted, is completely inefficacious. But I have satisfied my own mind that there is no such inharmony as is supposed, between the statute of this state and the regulations of this deed, as they are now drawn in question. It is true that this assignment has created preferences which are forbidden by our laws, and that, therefore, the deed accompanying it could not be set up against creditors resident in this state. But this does not touch the point of inquiry which is, whether the laws of this government prohibit preferences between non-resident creditors, under an assignment legal by the laws of the debtor's domicile? Have we any statute inconsistent with such a disposition of the debtor's property among foreign creditors? If we have, this conveyance, as I think, is certainly void; but if we have none such, then, just as certainly it must be valid. But that we have no such law is the precise deduction upon which the decision ofMoore v. Bonnell, and its train of accordant cases, can alone be rested, for the hypothesis there was, that we have no local policy which a creditor, resident in the place of assignment, can put in operation to defeat a transfer not repugnant to the law of such place. It is certain that our statute relating to assignments does not discriminate between personal and real estate, the two species of property stand upon the same footing; the creation of a preference which would vitiate a transfer of the former, would, undoubtedly, annul a conveyance of the latter, and I think it equally clear that the converse of this proposition is also true, and that any disposition of the debtor's property, which is admissible with *Page 482 
regard to chattels, is likewise admissible with regard to realty."
Small v. Smith, 14 S. Dak. 621; 86 N.W. Rep. 649;86 Am.Rep. 808; Castleman v. Templeman, 87 Md. 546; 67 Am. Rep. 363;40 Atl. Rep. 275, quotes with approval the following in Hurd
v. City of Elizabeth, supra:
"After completely protecting its own citizens and laws, the dictates of international comity would seem to require that the officer of a foreign tribunal should be acknowledged and aided."Patterson v. Lynde, 112 Ill. 196; Bagby v. Railroad Co.,86 Pa. St. 291; Metzner v. Bauer, 98 Ind. 427; Bank v. McLeod,38 Ohio St. 174; Gilman v. Ketcham, 84 Wis. 60;36 Am. Rep. 899; 54 N.W. Rep. 395; Boulware v. Davis, 90 Ala. 207; 8 So. 84; Chicago, c., Railway Co. v. Keokuk Northern Line PacketCo., 108 Ill. 317; 48 Am. Rep. 557; Killmer v. Hobart, 58 How.Pr. 452.
"In the case at bar it will be noticed that the action is to recover the possession of a tract of land in this state claimed to be owned by the banking company for which the plaintiff was appointed receiver. No question of the right of creditors in this state, so far as the record discloses, is involved. Certainly, if defendant is holding possession of the property wrongfully as against the receiver, it is not the policy of this state to protect him in such holding. If he is the owner or entitled to the possession of the property, we may reasonably assume that our courts will protect him in such right. It seems to us, therefore, that comity, as it exists between the states of this union, requires that it be extended by this court to a case like that one at bar. We are of the opinion, therefore, that the demurrer to the complaint, interposed upon the ground that it was not competent for the receiver to sue in the courts of this state, was properly overruled, and the order of the circuit court overruling the same is affirmed."
The Pennsylvania statute, as set forth in the stipulation, specifically provides that in cases such as this, the secretary of banking, c., of the State of Pennsylvania, is vested with the property of the corporation taken over.
It seems to follow, as a necessary corollary, that as the *Page 483 
secretary of banking, c., is vested "with all the rights, powers and duties of such corporation or person, and with all the property of such corporation or person, including debts due, liens, or securities therefor, and rights of action or redemption, whether or not the property of such corporation or person, including debts due, liens, or securities therefor, and rights of action or redemption are held in the name of such corporation or person, or in the name of some other corporation or person, but actually the property of the corporation or person of which or of whom the secretary has possession," c., he can convey the same, whether it lies within the Commonwealth of Pennsylvania or in this state.