## Secretary of Banking Appeals.

Argued September 28, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

petition for modification denied January 14, 1944.

*Harry F. Stambaugh,* with him *Horace Thomas, Jr., John W. Lord, Jr.,* Special Deputies Attorney General, *Orville Brown,* Deputy Attorney General, and *James H. Duff,* Attorney General, for appellant.

*John D. Meyer,* with him *Paul W. Brandt,* Amici Curiæ.

OPINION BY MR. JUSTICE LINN, November 22, 1943:

These appeals by the Secretary of Banking bring up for construction the Department of Banking Code, Act of May 15, 1933, P. L. 565, 71 PS section 733-1 et seq., particularly that portion of section 1010, at page 613, italicized in the following quotation of part of the section: "Confirmation of Account; Distribution of Dividends.—A. If the secretary has approved all depositors' claims, or, in the case of building and loan associations, all shareholders' claims, as presented by them pursuant to the provisions of this act, or if not presented, as they appear upon the books or other records of the institution, *and if no exception has been filed to an account or to any item thereof within thirty days after the filing of such account by the secretary, the court shall confirm the account absolutely.* If any funds are available for distribution, the secretary shall then declare and pay out of such funds a partial or a final dividend, according to the priorities established by law."

Four bank liquidations are involved. We understand from the briefs, that in each case a first and partial account had been filed and had been confirmed without audit except that where exceptions were filed they were heard and disposed of by the court. The effect of such action was to determine who the depositors, creditors and claimants were and the amounts of their claims: see, inter alia, sections 1002, 1003, 1007, 1010 B. Thereafter, from time to time, partial accounts (section 1007) were filed and confirmed pursuant to section 1010 A. Partial distribution followed. In each case, that was the state of the record when another partial account, now before us, was filed and was presented to the court for confirmation. No exceptions (sections 713 B,[1] 1008 and

---

[1] Section 713 B provides that ". . . Neither a depositor or other creditor of the institution, nor any other claimant, may maintain any action at law or in equity upon such claim, except by regular method provided by this act for exceptions to the accounting of the secretary as receiver. . . ."

1009) to any of the partial accounts, or to any item in them, had been filed; more than 30 days had elapsed, and the statutory notice to interested parties had been given, section 1007. Instead of confirming the accounts pursuant to the mandate of section 1010 A, the court appointed auditors "To examine and audit the account and to report to the court within two weeks from this date, recommending confirmation or disapproval of the account as filed." In three cases, the court, acting on the auditor's report, disapproved the account and denied confirmation and in the fourth (number 159) confirmed the account subject to the payment of a specified sum to the auditor.

We are informed that the appointment of auditors to recommend "confirmation or disapproval" at the expense of the parties interested in the liquidation, is an innovation; that hitherto, the judges throughout the Commonwealth have confirmed hundreds of such accounts on satisfying themselves that the account had been duly executed, proper notice given and that no exceptions had been filed.

The appellant Secretary, acting by the Attorney General, objects to the innovation as unwarranted by the Code; he contends that the provision in section 1010 A is mandatory.[2] On the other side, the auditor contends that, while mandatory in form, the legislature intended that it should not be so construed; that the ample liquidation powers conferred on the Secretary were intended to be restricted to require him to vouch his account before an auditor appointed by the court even in cases in which no exceptions were filed. These appeals show that the contention was carried to the extent of requiring the Secretary to satisfy the auditors that compromises, sales, etc. (see sections 715 to 720) theretofore made with the approval of the same court were lawful.

---

[2] Compare *Stitzel's Estate*, 221 Pa. 227, 70 A. 749; *Newhall Appeal*, 346 Pa. 518, 31 A. 2d 127.

The Banking Code and the Department of Banking Code impose important duties and grave responsibility on the Secretary of Banking. In specified circumstances, he becomes receiver of the bank in his possession with the duty of collecting and converting the assets and distributing the proceeds, less administration expense. He is the statutory receiver: sections 601, 604; no other receiver may be appointed and he is authorized to act by deputy: section 702. He owes certain responsibility, as the Code provides, to the court in which his certificate of possession is filed (section 709) but in many respects the powers, duties and responsibility imposed by the statute differ from those of a receiver appointed on the equity side in other winding-up proceedings.[3] The comprehensive powers which the court on the equity side might exercise generally, are restricted by provisions of the Code specifically providing what the court shall or may do on application by the Secretary or any interested creditor or claimant.

Section 1010 A must be construed in the light of obvious legislative intention to create the Department of Banking into an administrative agency,—inter alia, for the liquidation of banks subject to the Code. While the word "shall," in some statutes and documents, is construed to mean "may," when the context shows that to have been intended,[4] we all agree that in section 1010 A the word was used in its mandatory sense. The duty to confirm absolutely is performed when the Court satisfies itself by inspection that the account has been executed as required by the Code, that the statutory notice has been given, that the account has been filed thirty days and that no exceptions have been filed in that time. The

---

[3] *Gordon, See'y. v. Biesinger*, 335 Pa. 1, 4, 6 A. 2d 425; *Royersford Trust Company's Case (No.1)*, 318 Pa. 81, 83, 178 A. 26; see also sections 701 and 713: compare *Gordon v. Spray Beach Hotel, Inc.*, 112 N. J. Eq. 469, 165 A. 82.

[4] *National Transit Co. v. Boardman*, 328 Pa. 450, 453 et seq., 197 A. 239.

legislature so restricted judicial action in the absence of exceptions. When the legislature intended that judicial action should be general instead of restricted, as in section 1010 A, it employed appropriate words expressly so providing. Examples of this are seen in every section beginning with section 717 and ending with section 720.[5] Section 717, which may be referred to as typical, provides, "The secretary may, with leave of court," surrender assets. Occasionally the provision is, "The secretary may [proceed] with leave of, and upon the terms and conditions prescribed by the court . . ."

In the Estate of Tarentum Savings & Trust Company, the auditor reported that he had examined six compromises of debts owing to the estate and that in each case the compromise was justified. The results of these compromises appeared in the account because, having been approved by the court, it was necessary to show the transactions in the next account. We assume the auditor examined these compromises on the theory that the mandate to confirm was a grant of authority to audit by inquiring into every item of charge and discharge shown in the account. This interpretation must be rejected because it is nullified by the sections referred to giving the Secretary power, with leave of court, to make compromises; there is no provision that he must a second time justify his action before the same court. The auditors' reports, speaking generally, approved some things done by the Secretary, disapproved others and suggested changes in administrative practice, even suggesting changes in legislation. It is unnecessary to refer specifically to these comments because, in our view, the appointments complained of were unauthorized.

In each case the order appealed from is reversed; and in each case the record is remitted with instructions to confirm the account absolutely. No order for costs will be made.

---

[5] Many other sections show the same thing: compare sections 1002, 1003, 1007, 1008.