# Richmond.

## BOCKOVER v. LIFE ASSOCIATION OF AMERICA AND ALS.

### January 25th, 1883.

FOREIGN INSURANCE COMPANIES—*Case at bar.*—B. was a policy-holder in company chartered in State of Missouri. In 1879, company was regularly adjudged to be insolvent, by court of Missouri. Under the decree and a statute of Missouri, passed that year, all its assets were vested in R., for benefit of its creditors. In 1880, in chancery court of Richmond B. attached debts due company by citizens of Virginia. Company answered, admitting claim of B., but denying that the debts were liable to the attachments; and R. become a party, claimed to be entitled to all the company's assets, including those debts. On motion to abate the attachments:

HELD:

    1. Statute providing mode for winding up insolvent corporations and distributing its assets equitably among those thereto entitled, impairs no contract, and is valid. Such is the Missouri statute of 1879.

    2. If a state allows a foreign corporation to do business within her limits, the corporation comes, as it is created, and brings its charter as the law of its existence.

    3. Every one dealing with it everywhere must notice the provisions of its charter for managing and controlling its affairs, both in life and after dissolution

    4. Under the decree and statute, the company's assets were validly vested in R., as trustee of an express trust, and the debts due company in Virginia could not be attached by a policy-holder in Virginia.

Appeal from decree of chancery court of the city of Richmond in suit of Benjamin T. Bockover, plaintiff, against the Life Association of America, Wm. C. Knight, T. M. Fowlkes, E. C. Stacy, Geo. P. Stacy, John A. Mosby, Thomas Guy, H. C. Hech-

ler, J. R. Rennie, W. A. Rennie, John H. Wright, R. S. Elam, T. G. Elam, Thomas B. Henley, A. T. Hundley, W. H. Toppy, Miles B. Branch, and B. K. M. Friend, defendants. The plaintiff in 1872 insured his life for $10,000, payable in 1882, in the defendant company, which was chartered in Missouri. In 1879, a Missouri court decreed it to be insolvent. Under the decree, and a Missouri statute enacted in 1879, all its assets were vested in Wm. S. Relfe, superintendent of the insurance department, for the use of its creditors and policy-holders. The object of the suit was to attach debts due company in Virginia. The chancery court abated the attachments. Bockover appealed. At its November term, 1882, this court affirmed the decree. A re-hearing was granted him. The opinion states the other facts and proceedings.

*John Hunter, Thomas Tabb* and *Kent & Neale,* for the appellant.

*Richard L. Maury,* for the appellees.

HINTON, J., delivered the opinion of the court.

This case is before this court upon a rehearing, and it has received the careful consideration which its importance demands.

The facts and pleadings, so far as they may be necessary for a proper understanding of the points decided, may be briefly stated as follows:

The Life Association of America, was, as its name indicates, a life insurance company, regularly incorporated under the laws of the state of Missouri, and doing business in the state of Virginia.

In this company the appellant, Benjamin T. Bockover, insured his life on the 28th day of September, 1872, for the benefit of his wife and children, for the sum of $10,000, payable

on the 28th of September, 1882, his policy being what is usually termed an endowment policy.

The company was, upon proper proceedings before a court of competent jurisdiction, in the state of Missouri, decreed to be insolvent, and on the 10th day of November, 1879, a decree of dissolution was entered, and in pursuance of said decree, and an act of the general assembly of the state of Missouri, all of the assets of said company were vested in and transferred to one William S. Relfe, superintendent of the insurance department of that state, who was authorized to sue for, hold and dispose of the same for the use and benefit of the creditors and policy-holders of said company.

In February, 1880, the appellant instituted suit in the chancery court of the city of Richmond to attach certain debts due here to the defendant company by citizens of this state. Upon the filing of his bill, and upon the affidavit required by law, an attachment was sued out of the clerk's office of the chancery court of the city of Richmond, and the parties who were indebted to the said Life Association of America were duly summoned to appear and answer.

This bill the Life Association of America answered, admitting the insurance of the appellant, and without controverting the amount of the claim in controversy, denied that the debts sought to be attached were liable to the claim of the plaintiff by virtue of said attachments.

The answer of said company then goes on to aver the institution of a suit in the circuit court of St. Louis by the said Relfe, superintendent as aforesaid, under the provisions of the existing laws of Missouri against said company, alleging that it was insolvent, and seeking to have it dissolved. It also avers that the court found the said company to be insolvent; and that on the 10th day of November, 1879, the court entered an order of dissolution, and conveyed all of the assets and property of said company, wherever situated, including the notes or debts in controversy, which were then in the possession of the defendant

company to Relfe, superintendent as aforesaid, for the benefit of the company's creditors and members. And with this answer the charter of said company and the decree of the circuit court of St. Louis are filed as exhibits.

On the 5th day of February, 1881, the said Relfe was made a party defendant upon his own petition, in which he alleged *inter alia*, that, by operation of the statute aforesaid, he was the legal successor of said company, and as such entitled to all of its assets, and authorized to defend all suits against it.

On the 24th day of February, 1881, the cause was heard, when the chancellor, being of opinion that the attachments were issued without sufficient cause, entered an order abating them.

From this decree the appellant was allowed an appeal by one of the judges of this court.

The question to be determined is, whether the said attachments were properly abated. And the solution of that question must depend in great measure, if not entirely, upon the force and effect to which the assignment to Relfe is entitled in this state.

That the legislature of Missouri had the lawful right to enact the statute of 1879, and so make it a part of the defendant company's charter, is clear, unless it in some way impaired the contract then existing between that company and the state of Missouri or the contract between the corporation and its members. And that it did not impair either of these contracts, we feel satisfied.

In the case of the *Commonwealth* v. *Farmers and Mechanics Bank*, 21 Pick. 551, Shaw, C. J., expresses his views on a kindred subject as follows: "It is," says he, "a legitimate exercise of legislative power, to provide, first, for a proper and effectual mode of ascertaining the facts, by a judicial investigation upon which the supposed delinquency depends; and secondly, for securing the assets of the delinquent institution to as large an extent as possible, in order to provide for a payment in full

amongst all the creditors, or if not sufficient for that purpose, then for an equal distribution."

And Morawetz, at section 448 of his book on Private Corporations, says: "It is apparent, from these considerations, that a state may, at any time, alter the laws regulating procedure and provide new remedies for the attainment of justice, although they be applicable to corporations already in existence." A statute, whose whole object is to provide a convenient and judicious mode for winding up an insolvent corporation and distributing its assets equitably amongst those entitled thereto, surely violates no contract and impairs no right of the corporators, and should be upheld in this state, as it certainly would be in Missouri. Id., § 665.

Now, when the state of Virginia permitted this corporation to come into its territory for the purpose of carrying on its business, it must be presumed to have consented that that company should exercise all of the powers conferred by its charter and the general laws appertaining thereto, unless prohibited from so doing by the direct enactments of this state, or by some rule of public policy to be deduced from the general course of legislation. This company then brought with it into this state all of its chartered rights and powers, and amongst them, this very right, in the event of its insolvency, to transfer all of its assets to the superintendent of the insurance department of the state of Missouri, for the purpose of paying its debts and distributing any surplus that may remain equitably amongst its members, and this provision is operative here, and every policy-holder and creditor is charged with notice of this charter right.

At the time this suit was brought, these choses in action had been transferred to and become vested in Relfe for the benefit of the creditors and members of the association. Under these circumstances, we think that the assignment to Relfe should have the same force and validity in this state as it had in the state of Missouri, and consequently should override the attachments; and that the "well settled general rule, that a transfer of move-

able property, good by the laws of the owner's domicil is valid, wherever else the property may be situate, and should prevail. *Wickham and Goshorn* v. *Lewis, Martin & Co.,* 13 Gratt. 442 ; *Kirkland, Chase & Co.* v. *Brune,* 31 Gratt. 126.

And for these views we find powerful support in the case of *Relfe* v. *Rundle,* 13 Otto, 222, in which we think this very question now before us was involved, if not directly passed upon. In that case, Waite, C. J., says, in speaking of the rights and duties of Relfe, the superintendent: "Relfe is not an officer of the Missouri state court, but the person designated by law to take the property of any dissolved life insurance corporation of that state, and hold and dispose of it in trust for the use and benefit of creditors and other parties interested.   The law which clothed him with the trust was, in legal effect, part of the charter of the corporation.   He was the statutory successor of the corporation, for the purpose of winding up its affairs.   As such he represents the corporation at all times and places in all matters connected with his trust.   He is a trustee of an express trust, with all the rights which properly belong to such a position.   He is an officer of the state, and as such represents the state sovereignty, while performing its public duties connected with the winding up of the affairs of one of its insolvent and dissolved corporations.   His authority does not come from the decree of the court, but from the statute.        *        *        *

"No state need allow the corporations of other states to do business within its jurisdiction unless it chooses, with, perhaps, the exception of commercial corporations; but if it does, without limitation, express or implied, the corporation comes as it was created.   Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence."   "It may be restricted in the use of some of its powers, while doing business away from its corporate home," says the Chief Justice, "but every person who deals with it, everywhere, is *bound to take notice of the provisions which have been made in its charter for the management and control of its affairs, both in life and after*

*dissolution.* By the charter of this corporation, if a dissolution was decreed, its property passed, by operation of law, to the superintendent of the insurance department of the state, and he was charged with the duty of winding up its affairs. Every policy-holder and creditor is charged with notice of this charter, which all interested in the affairs of the corporation, can insist shall be regarded."

Now, in that case, as in this, the policy was taken out before the passage of the act of 1879; and in this case, as in that, Relfe must be held to be the trustee of an express trust, and in such case, we do not think the attachments should be allowed to prevail against the vested rights of Relfe.

For these reasons we are of opinion that the decree of the chancery court of the city of Richmond, abating the attachments sued out by the appellant, is plainly right, and must be affirmed.

DECREE AFFIRMED.