O'MALLEY, superintendent, *et al v.* WILSON *et al.*

Nos. 10703, 10865, 10906.   MARCH 11, 1936.   REHEARING DENIED
MARCH 27, 31, 1936.

*Little, Powell, Reid & Goldstein, James P. Aylward,* and *Court-ney S. Goodman,* for plaintiffs in error.

*W. L. Bryan, M. H. Collier, John R. Wilson, Ellis & Bell, Harold Hirsch, Marion Smith, A. S. Clay, Emanuel Javetz, Haas, Gambrell & Gardner, Charles D. Hurt,* and *I. S. Nathan,* contra.

RUSSELL, Chief Justice. ■ The motions to dismiss the writs of error are based on the ground that this court is without jurisdiction to entertain a single bill of exceptions wherein the plaintiff in error seeks to bring to this court two cases between different parties, for the reason that there is no law authorizing such a practice or conferring jurisdiction upon this court to entertain such a writ of error. All of the motions are substantially the same. However, it is to be observed that in the first paragraph of the motions (as to case 10703) it is said that "after two separate actions were filed and given a separate docket number, the said two separate actions were consolidated; that a demurrer was filed in the said consolidated causes in which each of the petitions in the said consolidated causes was demurred to;" . . that the court entered a single order overruling said demurrer." The order of consolidation appears in the record, as follows: "The foregoing petition of George Harwell Bond having been presented to the court simultaneously with the petition of John R. Wilson, both seeking equitable relief against the Missouri State Life Insurance Co., and counsel agreeing thereto, it is ordered that said cases be consolidated and proceed under case No. 99416." It appears from the bill of exceptions in case No. 10906 that the court directed a verdict for the plaintiffs (not plaintiff), and the decree was rendered in favor of the present defendants in error who are moving to dismiss the bills of exceptions. The only thing which seems to support the contention of movants is the fact that they have finally separated themselves, and make separate motions to dismiss each writ of error. The Code of 1933, § 3-112, provides that "Suits between the same parties, arising under the same contract, involving the same pleas and upon which the same verdict may be rendered, may be consolidated if the ag-

gregate amount shall not exceed the jurisdiction of the court." In *Railroad Commission of Georgia* v. *Southern Ry. Co.*, 154 *Ga.* 297 (114 S. E. 335), it was held: "The discretion of the trial judge in refusing, on motion, to consolidate cases will not be disturbed, unless there is a very plain case of abuse of discretion to the detriment of the movant. Under the circumstances showing the character of the two cases which the court refused to consolidate, upon which ruling error was assigned in this case, even if the judge would have been authorized to consolidate the cases, there was no abuse of discretion in refusing to do so." See also 1 C. J. 1123, 1124. The ruling in the case just cited, that the judge was clothed with a discretion in refusing to consolidate the cases, in our opinion, necessarily implies a like discretion in granting or ordering a consolidation of two cases, under the Code, § 3-112. The word "consolidation," used as a legal term, has a clear and definite meaning. "Consolidation" is the act of consolidating, or the status of being consolidated, and "consolidated" means united so as to form a solid mass, or one system. The consolidation of actions at law is "the process of merging two or more actions into one by order of the court, done to save litigation and expenses." Funk & Wagnalls New Standard Dictionary (ed. 1921), 563. In Bouvier's Law Dictionary, 620, the following definitions are given: "Consolidate— To unite into one, distinct things or parts of a thing. In a general sense to unite into one mass or body. . . In parliamentary usage, to consolidate two bills is to unite them into one. In law, to consolidate benefices, actions, or corporations is to combine them into one. Where two actions are consolidated, the original actions are discontinued, and only the consolidated remains." "Consolidation of actions has been defined as the combination of several actions into one. Consolidation of actions means the creation of one out of two or more that might reasonably have been brought as one." 1 C. J. 121, citing Harrigan *v.* Gilchrist, 121 Wis. 127. "Consolidation of actions does not mean a consolidation of trials. It is not a trial of several actions together, but the trial of one action instead of several actions, the consolidation having the effect of creating one action out of two or more that might have been brought into one." 1 C. J. § 308. In *Spinks* v. *LaGrange Banking Co.*, 160 *Ga.* 705 (129 S. E. 31), it was held: "When the rights of all concerned in a common subject-matter may be adjudicated in a single proceeding without

prejudice to any, equity may interfere to prevent a multiplicity of suits; and the rule may be as well applied in the consolidation of suits already pending as in an instance where the proceeding is an initiatory one. 'It is in the discretion of the judge of the superior court to consolidate two cases sued in that court into one . . Such discretion will not be interfered with unless abused.' . . The consolidation of the prior action at law amounted practically to a withdrawal of the legal action, and was tantamount to an order dismissing it." In *Smith* v. *Dobbins,* 87 *Ga.* 303, 316 (13 S. E. 496), this court held: "Where several executions in favor of different plaintiffs have been levied on the same property, and one person has filed in resistance to each levy a separate claim, and the claim cases thus made are pending in court, all involving the same question, and it being one upon the decision of which the subjection or non-subjection of the property to all the executions depends, an equitable petition will lie in favor of the claimant against all the plaintiffs jointly, to bring to trial all of the claims together, and dispose of them by one verdict and judgment. . . The doctrine is well established that equity will interfere to restrain the bringing of a multiplicity of suits when the rights of all concerned may be adjudicated without prejudice to any in a single proceeding, and there is no reason in principle why this rule should not be applied to *cases already brought and pending* by consolidating them into a single case." See also *Roulett* v. *Mulherin,* 100 *Ga.* 591 (2) (28 S. E. 291), holding that "Under such circumstances the trial judge might, in his discretion, pass an order directing that the two cases be consolidated and heard together, and in this manner have all the issues disposed of by a judgment binding and conclusive upon all the parties before the court." In *McLendon* v. *Bonner,* 164 *Ga.* 869 (5) (139 S. E. 799), this court ruled that "Where several suits were pending in the same court between different parties, all involving the same grounds of attack upon a deed, . . it was not erroneous as against the defendants to order a consolidation of the cases on application of the petitioning creditors in one of the suits." All these cases came to this court by one bill of exceptions.

One of the earliest instances of consolidation is that of *Hatcher* v. *National Bank of Chambersburg,* 79 *Ga.* 542 (5 S. E. 109). An examination of the record shows that several cases were con-

solidated, 17 and 18, Macon Circuit, March and October terms, 1887. The record also shows that cases 46 to 48 inclusive, and 175 to 184 inclusive, were involved in the consolidated case. The recital in the bill of exceptions in No. 17, October term 1887, is "That there came for hearing, before the judge presiding, the several cases of National Bank of Chambersburg v. Hatcher, said cases being numbered 46 et seq." These cases were consolidated by order of the court, a jury was empaneled, and a verdict rendered in favor of the plaintiff in the case as consolidated, in case No. 18, March term, 1888. The bill of exceptions states that a verdict was taken for the full amount due on the several notes set out in the several declarations and suits, consolidated into one suit. In *White* v. *Interstate Building & Loan Asso.*, 106 *Ga.* 146 (32 S. E. 26), it appears from the record of file in the clerk's office that White, the claimant, objected to the consolidation of the two cases, but that the court overruled the objection and ordered both cases tried as one. Upon review this court held: "There was no error in directing that the claim case and the case made by the equitable petition be consolidated and tried together. . . We see no reason why, since the passage of that act [the uniform-procedure act of 1887], two cases of the character involved in the present litigation may not, in the discretion of the trial judge, be disposed of together and submitted to one jury under the direction of the court." It is not necessary or requisite that all of the issues in the cases to be consolidated are identical. This principle is apparent from *Smith* v. *Dobbins,* supra, to which we have already referred, and is emphasized in *Portwood* v. *Huntress,* 113 *Ga.* 815 (39 S. E. 299). In that case this court unanimously held that where "several persons have a community of interest in maintaining against one a contention, or contentions, which he is interested in resisting; or there are several who have a community of interest in maintaining a contention, or contentions, against several who have a community of interest in resisting the same; and such contention, or contentions, is or are involved in two or more pending suits, equity will consolidate them and bring to trial in one action the disputed issues." It was also held that the court erred in allowing the consolidation in this case, because there were several distinct and incongruous causes of action which should not be consolidated. As to that feature the court said: "It would be subjecting Huntress

to an unnecessary hazard to compel him to try his issues with Portwood and Anderson along with other issues in which he had no interest. He might, with two good cases, lose both by being forced into bad company." And upon that line the court proceeded to point out, as applicable to the case then before it, that "It is certainly not true that all of the issues in each case are identically or even substantially the same. It is only when this latter condition exists that equitable consolidation can be demanded as matter of right." In other words, while the issues in the case need not be identical, they need only be substantially the same. In the case before us, the cases are so substantially the same that it is not to be wondered that at first blush the plaintiffs "agreed" to the consolidation.

One of the grounds of the motion to dismiss is that there is no law to authorize the bringing of two cases to the Supreme Court by a single writ of error. However, the decisions of this court which have been cited at least afford physical precedents which are valuable as persuasive authority, in the absence of any legislation upon the subject; and the proposition need not be considered at all if our view and that of the lexicographers is correct, that consolidation of no matter how many cases reduces the mass into one case.

■ The controversy in this case is between policyholders in Georgia, on the one hand, and O'Malley, the statutory representative of the Missouri State Life Insurance Company, on the other, as to their respective rights to what defendants in error claim are Georgia assets belonging primarily to Georgia creditors. In other words, the question is whether, in opposition to the laws of Missouri, the courts of Georgia can seize the assets of the defunct corporation of Missouri which are located in Georgia, and apply them in satisfaction of the claims of citizens of Georgia. We are of the opinion that this can not be done, for two reasons: First, the petition in this case discloses that it is not based upon the laws of Georgia applicable to life-insurance companies. In 1912 the General Assembly of Georgia passed an act with reference to this matter (Ga. L. 1912, pp. 119-143). This legislation was confined entirely to domestic insurance companies chartered by this State. But in 1914 the General Assembly passed an act (Ga. L. 1914, p. 135) which extended all the provisions of the original act to life-insurance companies doing business in this State; and, considered

with its context, this necessarily means only insurance companies chartered in States other than Georgia, and includes such institutions as the Missouri State Life Insurance Company. Section 29A of the act of 1914 provides in part: "Before any insurance company chartered under the laws of this State or doing business in this State shall hereafter be put in the hands of receiver by any court of equity in this State, upon any claim or demand not in judgment, it must first appear that the cause of complaint and the matters and grounds upon which the receivership is sought have been submitted by the complainant to the Insurance Commissioner of this State, and that such complaint of the complainant and the matters charged against such insurance company have been passed upon by the Insurance Commissioner sitting in connection with the Governor and the Attorney-General in the manner hereinafter provided." The failure of the petitioners in this case to allege that they pursued the statute required by the public policy of this State, properly construing the petition, is unanswerable evidence that they have not pursued the Georgia law; and for that reason the demurrer by which the petition was assailed should have been sustained and the petition should have been dismissed. However, should it even be conceded that the petition is only an ordinary proceeding in equity to prevent the waste or destruction of the assets of an insolvent, as provided in our Code of 1933, § 28-403, the question arises whether this court can sanction a proceeding in violation of article 4, section 1, of the constitution of the United States, which requires that full faith and credit be given to the public acts and judgments of other States, when not in conflict with our own law. It is apparent that the acts of 1912 and 1914, to which we have referred, are not in conflict with the Missouri statute upon the same subject. Section 7085 of the Revised Statutes of Missouri of 1909 provides: "Upon the rendition of a final judgment dissolving a company, or declaring it insolvent, all the assets of such company shall vest in fee simple and absolutely in the Superintendent of the Insurance Department of this State, and his successor or successors in office, who shall hold and dispose of the same for the use and benefit of the creditors and policyholders of such company and such other persons as may be interested in such assets."

We must bear in mind that the State of Georgia has perhaps gone further than any other commonwealth in the United States in according paramount authority to the constitution of the United States, the laws of the United States in pursuance thereof, and all treaties made by the authority of the United States. See Code of 1933, § 2-8501. In addition, in the long history of this court the decisions of the Supreme Court of the United States on questions affecting any portion of the Federal court, as for instance this case does (article 4), this court has given proper adherence to the views of the supreme tribunal. As far back as 1880 the Supreme Court of the United States had under consideration a case which we think is controlling of the subject now before us. Relfe *v.* Rundle, 103 U. S. 222 (26 L. ed. 337). In that case, as in the one now before us, the courts of Louisiana appointed a receiver in Louisiana. In that case, as in this, the insurance company was dissolved by decree of the Missouri court and its property vested in the superintendent of the insurance department of Missouri. The only difference in the Relfe case and the case now before us is that the insurance commissioner then merely asked for the removal of the case to the circuit court of the United States for the district of Louisiana; and this is not material, inasmuch as the same principle can apply in either event if Georgia has jurisdiction, as claimed by the defendants in error. In the Relfe case Mr. Chief Justice Waite, delivering the opinion of the court, said: "We think the circuit court erred in remanding the cause. The entire controversy is between the appellees, representing the Louisiana crditors and policyholders on one side, and Relfe, the statutory representative of the corporation and its property on the other, as to their respective rights to what the appellees claim are Louisiana assets belonging primarily to Louisiana creditors. Fell and the receiver of the Columbia Life Insurance Company are formal parties only. Fell has in his possession, as a naked trustee, some of the Louisiana assets, and the receiver of the Columbia Life Insurance Company is, so far as anything appears, no more than a general creditor of the dissolved corporation whom, necessarily, under the law, Relfe represents. After the decree of dissolution the Life Association Company had no longer any corporate existence, and the temporary agency and receivership of Frost was ended when the property of the corporation was transferred to

Relfe and he became under the law entitled to the possession. Relfe is not an officer of the Missouri State court, but the person designated by law to take the property of any dissolved life insurance corporation of that State, and hold and dispose of it in trust for the use and benefit of creditors, and other parties interested. The law which clothed him with this trust was, in legal effect, part of the charter of the corporation. He was the statutory successor of the corporation for the purpose of winding up its affairs. As such he represents the corporation at all times and places in all matters connected with his trust. He is the trustee of an express trust, with all the rights which properly belong to such a position. He is an officer of the State, and as such represents the State in its sovereignty while performing its public duties connected with the winding up of the affairs of one of its insolvent and dissolved corporations. His authority does not come from the decree of the court, but from the statute. He appeared in Louisiana not by virtue of any appointment from the court, but as the statutory successor of a corporation which the court had in a legitimate way dissolved and put out of existence. He was, in fact, the corporation itself for the purpose of winding up its affairs.

"We are aware that, except by virtue of some statutory authority, an administrator appointed in one State can not generally sue in another, and that a receiver appointed by a State court has no extra-territorial power; but a corporation is the creature of legislation, and may be endowed with such powers as its creator sees fit to give. Necessarily it must act through agents, and the State which creates it may say who those agents shall be. One may be its representative when in active operation, and in full possession of all its powers, and another if it has forfeited its charter and has no lawful existence except to wind up its affairs. No State need allow the corporations of other States to do business within its jurisdiction unless it chooses, with perhaps the exception of commercial corporations; but if it does, without limitation, express or implied, the corporation comes in as it has been created. Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence. It may be restricted in the use of some of its powers while doing business away from its corporate home, but every person who deals with it everywhere is bound to take notice of the provisions which have been made in its charter for the

management and control of its affairs both in life and after dissolution. By the charter of this corporation, if a dissolution was decreed, its property passed by operation of law to the superintendent of the insurance department of the State, and he was charged with the duty of winding up its affairs. Every policyholder and creditor in Louisiana is charged with notice of this charter right which all interested in the affairs of the corporation can insist shall be regarded. The appellees, when they contracted with the Missouri corporation, impliedly agreed that if the corporation was dissolved under the Missouri laws, the superintendent of the insurance department of the State should represent the company in all suits instituted by them affecting the winding up of its affairs. Relfe, therefore, became, by operation of law, the successor of the corporation in the litigation these appellees instituted in Louisiana. He was, in legal effect, their only opponent in the suit they had begun, and as he appeared in time and was a citizen of Missouri, representing a Missouri corporation, he was entitled to remove the cause and require citizens of Louisiana to litigate their claims with him in the courts of the United States."

The case of Blake v. McClung, 172 U. S. 239 (19 Sup. Ct. 165, 43 L. ed. 432), on which counsel rely, would be in point if it appeared that the laws of Missouri now under consideration gave special preference of any kind to the citizens of Missouri in the distribution of the assets of an insurance company; but inasmuch as no such preference is given, nothing said in that decision in any way conflicts with our holding in this case. Furthermore, in the Blake case the Supreme Court said: "We must not be understood as saying that a citizen of one State is entitled to enjoy in another State *every* privilege that may be given in the latter to its own citizens. There are privileges that may be accorded by a State to its own people, in which citizens of other States may not participate except in conformity to such reasonable regulations as may be established by the State. . . A State . . may require a non-resident, although a citizen of another State, to give bond for costs, although such bond be not required of a resident. Such a regulation of the internal affairs of a State can not reasonably be characterized as hostile to the fundamental rights of citizens of other States. So, a State may, by rule uniform in its operation as to citizens of the several States, require residence within

its limits for a given time before a citizen of another State who becomes a resident thereof shall exercise the right of suffrage or become eligible to office. It has never been supposed that regulations of that character materially interfered with the enjoyment by citizens of each State of the privileges and immunities secured by the constitution to citizens of the several States." The portion of the opinion in the Blake case to the effect that a State may by its courts retain within its limits assets of a foreign corporation, in order that justice may be done its own citizens, and by appropriate action of its judicial tribunals see that its own citizens are not unjustly discriminated against by reason of the administration in other States of the assets of insolvent corporations doing business within its limits, has no application in this case; for it is not made to appear that justice can not be done in the State of Missouri, or that the superintendent of insurance, a State officer in Missouri, will unjustly discriminate against the creditors of the insurance company who are citizens of Georgia. The Supreme Court in the Blake case referred to enactments requiring foreign insurance corporations to deposit sufficient funds with the State treasurer to secure policyholders. That has no application in the present instance, since there are no funds deposited with the State Treasurer of Georgia to secure the policyholders of Georgia.

The case of Clark v. Willard, 294 U. S. 211 (55 Sup. Ct. 356, 79 L. ed. 865, 98 A. L. R. 347), is so differentiated by its facts from Relfe v. Rundle, supra, which is not even alluded to in the Clark case, that it is unnecessary to consume time or space in our reports with the result of our laborious analysis of the Clark case, and a reading of the later decision will convince any intelligent reader that there is nothing therein which in any way conflicts with the older ruling in the Relfe case, supra, which has been cited in several cases, including among others Keatley v. Furey, 226 U. S. 399, 403 (33 Sup. Ct. 121, 57 L. ed. 273); Converse v. Hamilton, 224 U. S. 243, 260 (32 Sup. Ct. 415, 56 L. ed. 749); Bernheimer v. Converse, 206 U. S. 516, 534 (27 Sup. Ct. 755, 51 L. ed. 1163).

Under the ruling made above as to case 10703, it follows that the court erred in the judgments of which complaint is made in writs of error 10865 and 10906.

*Judgments reversed. All the Justices concur, except Atkinson, J., who dissents, and Bell, J., disqualified.*