Joseph McDonald, Respondent, v. Pacific States Life Insurance Company, a Corporation, Defendant, M. T. Minton, Garnishee, Jackson Cochrane as Commissioner of Insurance of the State of Colorado and Primary Statutory Liquidator of Pacific States Life Insurance Company, a Colorado Corporation, and Frederick W. Standart as Special Deputy Commissioner of Insurance of the State of Colorado, and Agent in the Liquidation of said Pacific States Life Insurance Company, Interveners and Appellants.—124 S. W. (2d) 1157.

Division One, January 20, 1939.

2

*Wallace F. Morgan, Oliver & Oliver, Dines, Dines & Holme* and *Milton J. Keegan* for appellants.

*Patrick A. Lavin* and *William Kohn* for respondent.

4

CLARK, J.—Appeal from a special order and decree after judgment entered March 28, 1938, in the Circuit Court of St. Louis County.

The facts are not in dispute. On February 16, 1934, respondent McDonald obtained a judgment in said circuit court against Pacific States Life Insurance Company, a Colorado life insurance corporation, on a policy on the life of his wife, who died in 1932. An execution was issued and returned unsatisfied.

On April 20, 1935, by decree of a district court in Colorado, the insurance company was adjudged insolvent and placed in liquidation under the Colorado Statutory Liquidator Act, and Cochrane, the Colorado Insurance Commissioner, was appointed liquidator. Thereafter, Cochrane appointed one Standart as a special deputy and agent.

By the terms of the decree and of the Colorado Act (Sess. Laws of Colo. 1935, chap. 137; 1935 Colo. Stat. Ann., chap. 87, secs. 223-231) the liquidator was charged with the duty to take charge of the assets of said corporation and liquidate them for the benefit of all the creditors. Said Act, among other things, provides that the liquidator "shall be vested by operation of law with title to all the property, contracts and rights of such company as of the date of the order so directing him to liquidate."

On June 17, 1935, the Colorado District Court entered an order enjoining "all persons, associations and corporations from maintaining, commencing and prosecuting any and all suits and actions at law or in equity wherein said Pacific States Life Insurance Company is a defendant, and from levying executions and having writs of attachment or garnishment in such litigation on any judgments heretofore or hereafter obtained against said company," etc.

On August 5, 1935, by decree of the Circuit Court of the City of St. Louis, R. E. O'Malley, Superintendent of the Missouri Insurance Department, was appointed ancillary receiver of said company to liquidate its assets on deposit with that department.

On January 23, 1936, respondent McDonald filed his verified proof of claim, based on his judgment, with the Colorado liquidator who allowed said claim. Claims were filed by other Missouri creditors aggregating about $350,000 and allowed by the liquidator. .

On July 23, 1937, respondent McDonald had the Clerk of the Circuit Court of St. Louis County issue an *alias* execution on his judgment directed to the Sheriff of Stoddard County, Missouri. Said sheriff levied upon the right, title and interest of the insurance company in a certain described tract of land in said county approximating 1880 acres, and, after publishing notice, sold said land and executed a deed to respondent for the sum of $715.50. .

The 1880 acre tract is a part of several tracts of approximately 27,- 000 acres of land in Stoddard and Dunklin Counties, Missouri, upon which the insurance company had in 1932 acquired deeds of trust securing notes. At about the same time the company had acquired a warranty deed purporting to convey a portion of the 1880 tract. This deed was in blank, that is, it did not contain the name of any grantee and was not recorded. The company had also acquired similar

deeds to other portions of the land in said counties. As to whether any of the deeds of trust had been recorded, the record is silent. These deeds and deeds of trust were in the possession of the company when it was placed in liquidation.

About March, 1934, the insurance company employed one Minton to manage its Missouri land, make leases, collect rents, etc., and he continued in such employment after the appointment of the liquidator. In October, 1937, the respondent McDonald had the Stoddard County sheriff serve a writ of garnishment and attachment under the execution on Minton, who then had in his hands certain money collected for the liquidator.

On January 28, 1938, by leave of court, the liquidator, Cochrane, and his deputy, Standart, filed in the original case in the Circuit Court of St. Louis County a petition against said McDonald alleging, among other things, the facts above set forth, and praying that said execution, levy, sheriff's sale, sheriff's deed and writ of garnishment and attachment be vacated, set aside, quashed and dismissed. McDonald answered, admitting the issuance of the execution, levy, sale, garnishment and attachment; also admitting the filing of his claim with the Colorado Liquidator, but alleging that at the time he did so he did not know that the company was in possession of Missouri lands and the rents and profits therefrom. Upon a trial, the court found the issues for the defendant McDonald and entered a decree dismissing plaintiffs' petition. From this decree plaintiffs have appealed to this court.

Appellants contend: first, that the proceedings under the Colorado Act above mentioned should be given such force and effect in Missouri as to prevent respondent from gaining a preference as to Missouri assets over creditors of other states and over other Missouri creditors. Second: that, even if such be not the law generally, yet in this case respondent should be precluded from obtaining such preference because he presented his claim to and had it approved by the liquidator in Colorado.

As to the first contention, respondent says that neither the Colorado Act nor the proceedings thereunder have any force or effect outside the limits of that state. In support of that contention respondent cites a number of cases from other jurisdictions and the following cases from Missouri: Pendleton v. Perkins, 49 Mo. 565, l. c. 570; Robertson v. Staed, 135 Mo. 135, l. c. 138, 36 S. W. 610; Waters-Pierce Oil Co. v. American Exchange Bank, 71 Mo. App. 653. The full list of the cases cited in this connection may be found in the note at 98 A. L. R. 353, 14 R. C. L. 369, section 11, 32 C. J. 813, section 12.

In all those cases, so far as we have been able to find, the powers of receivers appointed in courts of chancery were under consideration. As to such a receiver the courts rightly hold that his power is derived

from the decree appointing him and extends no farther than the territorial limits of jurisdiction of the court making the appointment. But the appellant liquidator in this case is more than a mere chancery receiver. He derives his power, not from the court's decree, but from the statute under which the decree was rendered. That statute is a part of the charter of the corporation, carried with it into every state in which it owns property or does business. Under that statute, when the Colorado court found the corporation insolvent and placed it in liquidation, the statutory liquidator became the corporation itself; that is, he succeeded to all its rights and title to its property and can protect such rights and assert such title in the courts of all the states as a matter of right and not merely by comity. [State ex rel. Insurance Company v. Hall, 330 Mo. 1107, 1. c. 1116, 52 S. W. (2d) 174; Relfe (as Superintendent of the Insurance Department of the State of Missouri) v. Rundle (1880), 103 U. S. 222, 26 L. Ed. 337; Converse v. Hamilton (1911), 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749; Clark v. Williard (1933), 292 U. S. 112, 78 L. Ed. 1160; O'Malley, Superintendent of Insurance Department of Missouri, v. Hankins (1935), 207 Ind. 589, 194 N. E. 168; O'Malley, Superintendent of Insurance Department of Missouri, et al. v. Wilson (1936), 182 Ga. 97, 185 S. E. 109; Wilson et al. v. Missouri State Life Ins. Co. et al. (1937), 184 Ga. 184, 190 S. E. 552; Harrison et al. v. Missouri State Life Ins. Co. (1936), 177 Okla. 377, 59 Pac. (2d) 774; Parsons et al. v. Charter Oak Life Ins. Co. (C. C. S. D. Iowa, 1887), 31 Fed. 305; Bockover v. Life Association of America (1883), 77 Va. 85; Martyne v. Am. Union Fire Ins. Co. of Philadelphia (1915), 216 N. Y. 183, 110 N. E. 503; Kinsler v. Casualty Company of America (1919), 103 Neb. 382, 172 N. W. 33; Cogliano v. Ferguson, 245 Mass. 364, 139 N. E. 527; Joy v. Midland State Bank (S. D. 1910), 128 N. W. 147; 98 A. L. R. 369, et seq.]

In considering the Missouri statute, from which the Colorado Act is substantially copied, we said in State ex rel. Insurance Company v. Hall, 330 Mo. 1. c. 1116, 52 S. W. (2d) 174: "On dissolution of the company the absolute title to its assets is vested in the superintendent for the benefit of creditors, policyholders and others interested."

In the case of Relfe v. Rundle, supra, the Supreme Court of the United States had under consideration the Missouri statute which was substantially the same as the present Missouri Act and the Colorado Act. In that case the facts were: Relfe, Insurance Superintendent of Missouri, began proceedings to dissolve a Missouri insurance corporation. Afterwards, Rundle and wife, policyholders of the company, commenced suit in a district court in Louisiana the object of which was to have a receiver appointed in that state and the assets of the company in Louisiana declared a trust fund and applied to the payment of the claims of Louisiana creditors and policyholders in preference to others. The Louisiana court sustained the bill and

appointed a receiver. Later, the Missouri court entered a decree dissolving the corporation and vesting its property and assets in Relfe as the liquidator under the statute, whereupon Relfe,. on his own motion, was made a party to the suit in Louisiana and filed a petition for removal to the federal court on the ground of diversity of citizenship. The federal court remanded the case to the state court and from that order Relfe appealed. . The Supreme Court, Mr. Chief Justice WAITE delivering the opinion, reversed the decision of the lower court and remanded the case, saying:

"We think the circuit court erred in remanding the cause. . The entire controversy is between the appellees, representing the Louisiana creditors and policyholders, on one side, and Relfe, the statutory representative of the corporation and its property, on the other, as to their respective rights to what the appellees claim are Louisiana assets belonging primarily to Louisiana creditors. . . .

"Relfe is not an officer of the Missouri state court, but the person designated by law to take the property of any dissolved life insurance corporation of that State, and hold and dispose of it in trust for the use and benefit of creditors, and other parties interested. The law which clothed him with this trust was, in legal effect, part of the charter of the corporation. He was the statutory successor of the corporation for the. purpose of winding up its affairs. As such he represents the corporation at all times and places in all matters connected with his trust. He is the trustee of an express trust, with all the rights which properly belong to such a position. He is an officer of the State, and as such represents the State in its sovereignty while performing its public duties connected with the winding up of the affairs of one of its insolvent and dissolved corporations. His authority does not come from the decree of the court, but from the statute. He appeared in Louisiana not by virtue of any appointment from the court, but as the statutory successor of a corporation which the court had in a legitimate way dissolved and put out of existence. He was, in fact, the corporation itself for all the purposes of winding up its affairs. . . .

"No State need allow the corporations of other States to do business within its jurisdiction unless it chooses, with perhaps the exception of commercial corporations; but if it does, without limitation, express or implied, the corporation comes in as it has been created. Every corporation necessarily carries its charter wherever it goes, for that is the law of its existence. It may be restricted in the use of some of its powers while doing business away from its corporate home, but every person who deals with it everywhere is bound to take notice of the provisions which have been made in its charter for the management and control of its affairs both in life and after dissolution.''

Relfe v. Rundle has been followed by the courts of many of the states and by later decisions of the United States Supreme Court.

In the case of Clark v. Williard, supra, the United States Supreme Court had under consideration a similar question. The District Court of Montana had held that the Iowa liquidator of a dissolved Iowa insurance company was the successor to the personality and title of the corporation; that the assets should be liquidated and ratably distributed subject only to liens existing at the date of dissolution; that an execution upon a judgment which had been recovered against the corporation should be set aside and canceled. Upon appeal the Supreme Court of Montana reversed the decree and reinstated the execution.

The case went by certiorari to the Supreme Court. Mr. Justice CARDOZO, in delivering the opinion, said:

"In our judgment the statutes of Iowa have made the official liquidator the successor to the corporation, and not a mere receiver. [State ex rel. Attorney General v. Fidelity Loan & Trust Co., 113 Iowa, 439, 85 N. W. 638.] His title is not the consequence of a decree of a court whereby a corporation still in being has made a compulsory assignment of its assets with a view to liquidation. [Sterrett v. Second National Bank, 248 U. S. 73; Lion Bonding Co. v. Karatz, 262 U. S. 77, 88; Great Western Mining Co. v. Harris, 198 U. S. 561, 575; Booth v. Clark, 17 How. 322.] His title is the consequence of a succession established for the corporation by the law of its creation. [Relfe v. Rundle, supra; Keatley v. Furey, supra; Sterrett v. Second National Bank, supra, p. 77; cf. Bockover v. Life Assn. of America, 77 Va. 85; Converse v. Hamilton, 224 U. S. 243, 257; Bernheimer v. Converse, 206 U. S. 516, 534.] So the lawmakers have plainly said. So the Iowa court adjudged in decreeing dissolution.

"We think the Supreme Court of Montana denied full faith and credit to the statutes and judicial proceedings of Iowa in holding, as it did, that the petitioner was a receiver deriving title through a judicial proceeding, and not through the charter of its being and the succession there prescribed. 'When the transfer of a debtor's property,' said the court, 'is the result of a judicial proceeding, there is no provision of the Constitution which requires the courts of another state to carry it into effect and as a general rule no state court will do this to the prejudice of the citizens of its own state,' citing Reynolds v. Adden, 136 U. S. 348, a case of insolvency proceedings in invitum against a natural person, and Zacher v. Fidelity Trust Co., 106 Fed. 593, an enforced assignment to the receiver of a corporation which retained its corporate life. Bankruptcy or insolvency proceedings, whether the debtor is a natural or a juristic person, confer upon the receiver or assignee a title which, generally speaking, is without recognition outside of the state of his appointment except in subordination to the claims of local creditors. [Security Trust Co. v. Dodd, Mead & Co., 173 U. S. 624; Cold v. Cunningham, 133 U. S. 107; Oakey v. Bennett, 11 How. 33, 44; Barth v. Backus, 140 N. Y. 230,

10

35 N. E. 425; Ward v. Connecticut Pipe Mfg. Co., 71 Conn. 345, 41 Atl. 1057; Gilbert v. Hewetson, 79 Minn. 326, 82 N. W. 655.] Upon the strength of these and like decisions the Montana court has refused recognition to a receiver or liquidator who in truth is a statutory successor. Whether it would have favored that conclusion if it had correctly interpreted his standing, its opinion does not tell us. The case should go back to the end that the priority of the execution may be determined with understanding of the title displaced and over-ridden.''

In the case of Martyne v. American Union Insurance Company, the Court of Appeals of New York ably discussed this question and reached the conclusion that a New York creditor cannot maintain an action in New York for the purpose of obtaining a judgment against a Pennsylvania insurance corporation in process of liquidation in that state. The court based its conclusion upon the rule of comity, makes a distinction between ordinary chancery receivers and statutory liquidators, quotes extensively, with approval, from Relfe v. Rundle, and discusses the public policy involved.

In a recent case decided by the United States District Court for the Eastern Judicial District of Missouri, Pensinger v. Pacific States Life Insurance Company, 25 Fed. Supp. 295, the rulings in the cases above cited are followed and the title of the appellant in the present case upheld.

In various cases cited, supra, to-wit: O'Malley v. Hankins, O'Malley v. Wilson, Wilson v. Missouri State Life Insurance Company, and Harrison v. Missouri State Life Insurance Company, the title of the Missouri Superintendent of Insurance in liquidating Missouri insurance companies, has been recognized and upheld as to assets located in other states, by the courts of Indiana, Georgia, and Oklahoma. We think these decisions are in accord with the weight of authority. As was said in Clark v. Williard, supra, l. c. 123:

''The tendency in most of the states is to give priority to the title unless a contrary policy is expressed with reasonable clarity.''

But respondent says that he should not be bound by the Colorado Act, because the same was passed after he obtained his judgment and long after the policy upon which said judgment was obtained was issued. As to this contention, we believe that a policyholder in an insurance company is bound by the statutory provisions of the state of the company's domicile; that such provisions are a part of the company's charter and subject to change by legislative enactment, unless the obligations of existing contracts are violated. We believe that the Colorado Act is not subject to this objection. This question was decided by us in the case of In the Matter of the Life Association of America, 91 Mo. 177, l. c. 183, 3 S. W. 833, wherein we said:

"Whilst the Legislature might alter this general law, which is the charter of the company, still it cannot invalidate contracts of individuals made with the company. But we do not see that the law is of that character. It certainly does not, in terms, relieve the company of anything which it contracted to do. Statutes which merely affect the remedy are not within the constitutional provision, federal or state."

The same question was decided by the Virginia Supreme Court in the case of Bockover v. Life Association of America, 77 Va. 88. We quote as follows:

"The question to be determined is, whether the said attachments were properly abated. And the solution of that question must depend in great measure, if not entirely, upon the force and effect to which the assignment to Relfe is entitled in this State.

"That the Legislature of Missouri had the lawful right to enact the statute of 1879, and so make it a part of the defendant company's charter, is clear, unless it in some way impaired the contract then existing between that company and the State of Missouri or the contract between the corporation and its members. And that it did not impair either of these contracts, we feel satisfied.

"In the case of Commonwealth v. Farmers and Mechanics Bank, 21 Pick. 551, SHAW, C. J., expresses his views on a kindred subject as follows: 'It is' he says, ' a legitimate exercise of legislative power, to provide, first, for a proper and effectual mode of ascertaining the facts, by a judicial investigation upon which the supposed delinquency depends; and secondly, for securing the assets of the delinquent institution to as large an extent as possible, in order to provide for a payment in full amongst all the creditors, or if not sufficient for that purpose, then for an equal distribution.'

"And Morawetz, at section 448 of his book on Private Corporations, says: 'It is apparent, from these considerations, that a state may, at any time, alter the laws regulating procedure and provide new remedies for the attainment of justice, although they be applicable to corporations already in existence.' *A statute, whose whole object is to provide a convenient and judicious mode for winding up an insolvent corporation and distributing its assets equitably amongst those entitled thereto, surely violates no contract and impairs no right of the corporators, and should be upheld in this state, as it certainly would be in Missouri*. Id., sec. 665. . . ." (Italics ours.)

But, respondent contends and we concede, that although the Colorado liquidator has broader powers and title than a mere chancery receiver, yet that is not decisive of the case; and that Missouri may yet declare a policy that Missouri assets shall be subjected to the claims of Missouri creditors in preference to creditors from other states. The right of each state to declare its own public policy in reference to such matters was conceded, rather regretfully, we think, by Mr. Justice CARDOZO in the case of Clark v. Williard, supra.

12

The public policy of a state is defined by its legislative enactments or by its courts of last resort, or both. So far as we have been able to find this matter has not been decided by this court.

We believe that the weight of authority is that the assets of insolvent insurance companies should be treated as a unit, and disposed of for the benefit of all creditors ratably without regard to the location of the assets or the residence of creditors. Insurance companies cannot, as commercial corporations, partnerships, and individuals may, take the benefit of bankruptcy laws and must submit to dismemberment and waste unless receivers are appointed to preserve their assets for the benefit of all their creditors. [Clark v. Williard, 292 U. S. 1. c. 123.] Insurance companies, if successful, must do business and make investments in many states. To permit the property of insolvent insurance companies to be subjected to the claims of the most diligent creditors in each of the states where such assets may be located, would result in the dissipation of such assets and the subjection of the same to the claims of the most diligent creditors in preference not only to the creditors of other states, but in preference to the claims of other creditors in the same state.

We believe that the legislative enactments of Missouri indicate a contrary policy. Our statutes, Sections 5941-5959, inclusive, provide a complete method for the dissolution of insolvent insurance companies. They provide for the equitable and ratable distribution of the assets to all the creditors without regard to location of assets or residence of creditors. The Colorado Act, which as already stated, is a copy of a portion of the Missouri statutes, provides for no preference in favor of Colorado residents; so that no question of retaliation by Missouri is involved.

Respondent says that he should not be restricted or limited by the charter of the corporation because he is a judgment creditor and not a policyholder, but his judgment was based upon a policy and his rights depend upon the terms of the charter. The respondent in this case had acquired no lien upon any assets in Missouri prior to the date of the dissolution decree in Colorado. True, he had procured a judgment, but the record does not show that any transcript of the same was ever filed in Stoddard County where the real estate later levied upon is located. There had been an execution issued prior to the dissolution proceedings, but no levy had ever been made under that execution and it had long since expired. The *alias* execution under which the levy was made was issued after the decree of the Colorado court dissolving the company.

Respondent cites Section 5951 found on page 69 of the Missouri Session Acts, Extra Session 1933-1934, as touching on the public policy of Missouri. That statute provides the order of payment of claims against insolvent domestic insurance companies as follows: first, expenses of administration; second, taxes; third, death losses and

matured policy claims; fourth, other debts, etc. Respondent says his judgment is based on a ''death loss and matured claim'' which, under the Missouri law, is given a preference that he will not get if relegated to the position of claimant under the Colorado law.

The Missouri statute applies to domestic insurance companies and becomes a part of the charters of such companies. It does not become a part of the charter of a company incorporated in another state, nor does it indicate any policy as to preference on account of residence of claimant or location of assets. Respondent is not contending for the right to have his claim paid in the order set forth in the Missouri statute. He is attempting to have his claim paid in full in preference to all other claims, even as to administration expense and taxes. If this is permitted, the order of payment of creditors residing outside the State of the corporation's domicile will depend upon the diligence of such creditors and their good fortune in locating assets. If Missouri adopts such a policy, why cannot other states do likewise? If such policy be generally followed, since most insurance companies are domiciled and their assets located outside of Missouri, in the long run a great injury to Missouri citizens will result. In the absence of laws in other states discriminating against Missouri creditors we do not believe that such is or should be the policy of Missouri in the dissolution of insolvent insurance companies.

Appellants also contend that respondent should be barred and precluded from proceeding to subject Missouri assets to the payment of his claim, because he filed his claim with and had it allowed by the Colorado liquidator. Respondent answers that he had no knowledge of any Missouri assets when he filed his claim; also, that he did not file it in court, but with the liquidator, and not for allowance, but for ''approval.''

The record does not show that respondent had any knowledge or means of knowledge of Missouri assets at the time he filed his claim with the Colorado liquidator; but the record does show (abstract, page 47) that his claim would be presented to the Colorado court for allowance and, further, that he consented to the allowance by that court. The record also shows that at, and long prior to, such presentation of his claim by respondent there was on the records of that court a decree (abstract 31-32) enjoining all persons ''from levying executions and having writs of attachment or garnishment issued . . . on any judgments heretofore or hereafter obtained against said company,'' etc.

By procuring the allowance of his claim in the Colorado court, we think the respondent became a party to the proceedings therein in such sense as to be bound by the decree above referred to. [Continental Oil Co. v. American Co-Op. Assn. (Wyo.), 228 Pac. 503, l. c. 506.]

We might rest our decision upon this point alone, but for the importance of declaring, as a matter of first impression, the public pol-

icy of Missouri in the matter of preferences upon the dissolution of insolvent insurance companies.

For the reasons given the decree of the trial court is reversed and the cause remanded with directions to enter a decree quashing and setting aside the execution, levy, and sheriff's sale, the writ of garnishment and attachment, and canceling and setting aside the sheriff's deed. All concur.