469 F.Supp. 126 (1979)
MANCHESTER INSURANCE & INDEMNITY COMPANY, Plaintiff,
v.
MANCHESTER PREMIUM BUDGET CORPORATION, Defendant.
No. 77-44 C(3).
United States District Court, E. D. Missouri, E. D.
March 12, 1979.
*127 J. L. Pierson and William G. Ohlhausen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for plaintiff.
Gerald A. Rimmel, Susman, Schermer, Willer & Rimmel, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Harry V. Jump, conservator of the Manchester Insurance & Indemnity Company, brought this suit seeking to recover monies owed on a promissory note. Defendant Manchester Premium Budget Corporation contends that it is entitled to set-off a sum representing unearned premiums on insurance policies financed by defendant but cancelled by plaintiff.
This cause was tried to the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

FINDINGS OF FACT
1) Manchester Insurance and Indemnity Company [hereinafter "Manchester"] is an Ohio-chartered corporation, having its principal place of business in the state of Missouri. Defendant Manchester Premium Budget Corporation [hereinafter "Premium"] is a corporation organized and existing pursuant to the laws of the state of Missouri, having its principal place of business in the state of Missouri. Manchester and Premium each have their principal place of business in the same location.
2) On September 23, 1975, Harry V. Jump, a citizen of the state of Ohio and Superintendent of Insurance of the state of *128 Ohio, was appointed conservator of Manchester.
3) On December 31, 1974, Premium, through its president, James B. Hutchings, executed a subordinated promissory note in the principal amount of $700,000.00, payable to Manchester on December 31, 1976, with interest at the rate of 9% per annum, payable semi-annually. On June 20, 1975, Premium paid Manchester the sum of $31,500.00 as a semi-annual interest payment on the note. On December 31, 1975, Premium again paid Manchester the sum of $31,500.00 as a semi-annual interest payment.
4) On January 7, 1977, James M. Young, Deputy Liquidator for the Ohio Department of Insurance sent a letter to Premium demanding payment of the matured noted. On behalf of Manchester payment of the $700,000.00 was sought as well as interest payments totalling $63,000.00. To date, said payments have not been made. The sum of $889,000.00 is presently owing; said sum includes interest for the years 1976, 1977, and 1978.
5) Premium was principally engaged in the business of financing insurance premiums written by Manchester. An individual who wished to finance premium payments would execute a promissory note, usually to the order of the agent selling the policy. The agent would transfer or assign the note to Premium who would then lend the unpaid balance of the premium. Payments were made by the insured to Premium. If an insurance policy were cancelled, the unearned premium, if any, would go from the general agent to Premium. The copy of any financed policy which was retained by Manchester would be stamped to indicate that it had been financed by Premium. James B. Hutchings, president of both Manchester and Premium, stated that through this course of dealings, Manchester recognized the existence of a lien in favor of Premium on any policy financed by Premium. The evidence adduced established that Premium has a total of 1,703 promissory note and assignment forms issued in connection with the financing of premiums. Of those forms, only 69 are signed by the insured, 1,499 are signed by someone other than the insured and 135 are not signed by anyone.
6) Manchester had issued insurance policies in the states of Alabama, Illinois, Kentucky, Louisiana, Mississippi, Missouri, North Dakota, and Ohio.
7) From September 23, 1975 to March 14, 1976, Manchester cancelled numerous policies. On March 14, 1976, by order of the Court of Common Pleas of Franklin County, Ohio, remaining policies were cancelled.

CONCLUSIONS OF LAW
This Court has jurisdiction of the subject matter and the parties to this suit in accordance with 28 U.S.C. § 1332.
A preliminary issue raised herein concerns the applicability of Missouri law to this suit. Missouri has adopted the conflict of laws position set forth in the Restatement of the Law Second, Conflicts. Kennedy v. Dixon, 439 S.W.2d 173 (Mo. banc 1969). After consideration of the factors involved herein, the Court concludes that the law of the state of Ohio should control. See § 302, Restatement of the Law Second, Conflict; cf., McDonald v. Pacific States Life Insurance Co., 344 Mo. 1, 124 S.W.2d 1157 (1939). It is the Court's further conclusion, however, that regardless of which state's law is applied, the result remains the same.
The sole issue raised herein is whether defendant Premium should be allowed to set-off against the monies it owes to Manchester the unearned premiums resulting from the cancellation of the insurance policies. Neither party disputes the fact that the insured individuals are entitled to a return of the unearned premium. The issue is whether Premium can set-off the same. The issue presents a close and difficult question of law.
The Court notes preliminarily that almost none of the promissory note and assignment forms are signed as required. Thus, only 69 insured have effected an assignment to Premium. Further, the Court notes that if set-off is allowed, Premium, and presumably *129 those insureds who financed the payment of their premiums, would receive a preference over other creditors of Manchester. The set-off would permit Premium to receive 100% credit; other creditors of Manchester clearly will not realize 100% of their claims.
Under the applicable Ohio law, set-offs of mutual debts and mutual credits are permissible. Ohio Revised Code § 3903.19. In order for the debts to be mutual, however, "the debts or credits must be in the same right and between the same parties, standing in the same capacity". 4 Collier on Bankruptcy ¶ 68.04[2.1]. Debts or credits that are "acquired collaterally as by purchase or assignment" do not fulfill the requirement of mutuality. United States ex rel. Kirby v. John A. Johnson & Sons, 111 F.Supp. 785, 787 (E.D.Tenn.1953). Additionally, the determination of the propriety of a set-off must be based upon the rights of the parties at the time of insolvency. Dakin v. Bayly, 290 U.S. 143, 148, 54 S.Ct. 113, 78 L.Ed. 229 (1933).
It is clear from the record herein that the claimed set-off can not be allowed. Defendant seeks to set-off against its obligation to Manchester the unearned premiums, now due because of the cancellation of insurance policies by the conservator. Premium's claim to said fund results from an assignment by the insured individuals to Premium, and the record reveals that for the most part the assignments were not even properly executed. The policies were not cancelled at the time of insolvency but at times thereafter. Accordingly, defendant's asserted right to the premium returns was not fixed at the time of insolvency.
The inequity of allowing a set-off herein is also very persuasive to the Court. If a set-off were allowed to defendant, those policyholders who financed the payment of their policies through defendant would be benefited, and the established order of preference would be disturbed. If set-off were not permitted, all policyholders would recoup their losses equally. Cf., Clay v. Independence Mutual Insurance Company, 359 S.W.2d 679, 683 (Mo.1962) in which the court stated:
. . . the policyholders, as creditors of the company, had claims against the receiver for their unearned premiums. [citation omitted] To permit Time to use the unearned premiums in its hands to purchase other insurance for these policyholders would result in refunds in full to the policyholders, thus creating a preference over other insureds and creditors.
Accordingly, judgment will be entered in plaintiff's favor in the sum of $889,000.00, with interest at the rate of 9% per annum from and after January 1, 1979.